MARYLAND CASUALTY COMPANY v. EULA L. GLASS.

Decided April 9, 1902.

**1.—Accident Insurance—Death—Proximate Cause—Anaesthetics.**

Where the insurer was liable in case of bodily injury or death sustained through external, violent, and accidental means, including anaesthetics where administered by a regular physician, provided the death should result from any such injury, independent of all other causes, and the insured died while undergoing a surgical operation under the influence of chloroform regularly administered, in an action to recover against the insurer the burden was on the beneficiary to show that the chloroform was proximately the sole cause of the death.

**2.—Same—Contributing Causes.**

The insurer was not liable if the chloroform would not have caused the insured's death had it not been for the appendicitis for which the operation was performed, or the insured died because the chloroform aggravated the effect of such disease, or the disease aggravated the effect of the drug.

**3.—Same—Fact Case.**

Evidence held to conclusively show, although the verdict of the jury was to the contrary, that the administration of chloroform was not, independently of all other causes, the proximate cause of the death of the insured.

Appeal from Dallas.  Tried below before Hon. Thomas F. Nash.

*W. J. J. Smith,* for appellant.

*Turney, Lewis & Lewis,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is an appeal from a judgment rendered in favor of appellee against appellant on an accident policy for $2000.

The policy sued upon contains the following provisions:

"1. In consideration of the warranties made in the application for this policy (copy of which is indorsed on the back hereof) and of ten dollars, the Maryland Casualty Company, of Baltimore, Maryland, hereinafter called the company, does hereby insure M. E. Glass, of Houston, in the county of Harris and State of Texas, hereinafter called the assured, by occupation commercial agent, classified by the company as 'A' special, for the term of twelve months, beginning on the twenty-seventh day of March, 1900, at 12 o'clock noon, and ending on the twenty-seventh day of March, 1901, at 12 o'clock noon, standard time, in the amount of two thousand dollars, principal sum, and weekly indemnity of ten dollars, against bodily injuries sustained through external, violent, and accidental means, as follows: If death shall result from any such injury, independent of all other causes, within ninety days from the happening of the accident causing such injury, the company will pay the principal sum above specified to Mrs. Eula L. Glass, wife of the assured, if surviving."

"5. This insurance does not cover disappearances, nor injuries, fatal or otherwise, resulting from poison or anything accidental or otherwise taken, administered, absorbed, or inhaled (anaesthetics administered by a regular physician excepted); nor injuries fatal or otherwise received while or in consequence of having been under the influence of or affected by or resulting directly from intoxicants, narcotics, vertigo, sleep-walking, fits, hernia, or any disease or bodily infirmity. But it is understood this policy covers the assured according to the terms thereof in the event of his injury from freezing, sunstroke, drowning, or choking or swallowing."

The application of M. E. Glass in writing for said policy attached to and made a part thereof contains the following: "I hereby apply for insurance against bodily injuries caused solely by violent, external, and accidental means, to be based upon the following statement of facts, which I warrant to be true."

It is undisputed that deceased died on the 14th of April, 1900, while undergoing a surgical operation for appendicitis; that preparatory to and during the operation, chloroform, an anaesthetic, was administered him by a regular physician, and that he was under the influence of it when he expired. The only question of fact to be determined is, did his death result from an injury sustained through chloroform independently of all other causes? The jury having found for appellee upon this issue, their verdict shall not be disturbed if the evidence is reasonably sufficient to support their finding. If the evidence does not reasonably tend to support the verdict the judgment entered upon it should be reversed.

Before considering the evidence upon this question, we will state our

understanding of the law which should guide and govern us in its solution.

It will be noted that by the fifth paragraph of the policy "anaesthetics administered by a regular physician" are excepted from such injuries as are not covered by the insurance. It may, therefore, so far as this case is concerned, be regarded as an insurance against death resulting from chloroform, independent of all other causes.

The burden of establishing the fact that the death of M. E. Glass resulted, independent of all other causes, from chlorofrom administered to him is on the plaintiff. In other words, she must prove that the anaesthetic was proximately the sole cause of his death. If his death was caused by it alone, the appellant by the policy is liable to the appellee in the principal sum therein specified. But if he was afflicted with disease which caused or directly contributed to his death, the company would not be liable, though chloroform might have been a cause concuring with his affliction in producing death. If he was suffering from appendicitis, as is shown by the indisputable evidence, and if the anaesthetic would not have caused his death had it not been for such affliction, but he died because the chloroform aggravated the effects of the disease, or appendicitis aggravated the effect of the drug, the company would not be liable under its contract. For in either event appendicitis and chloroform would be concurring and inseparable agents proximately contributing to his death, and it could not have been the result of an injury from anaesthetic, independent of all other causes. Association v. Fulton, 79 Fed. Rep., 423; Association v. Shryock, 73 Fed. Rep., 775; Westmoreland v. Insurance Co., 75 Fed. Rep., 245; Hubbard v. Association, 98 Fed. Rep., 930; Insurance Co. v. Meleck, 65 Fed. Rep., 178; Insurance Co. v. Selden, 78 Fed. Rep., 285; Insurance Co. v. McConkey, 127 U. S., 661, L. Ed., book 32, 308.

Now as to the evidence. It is shown beyond question that the assured was suffering from appendicitis which had made such progress as to render his dissolution inevitable within a very short time unless relieved by a surgical operation. Physicians, upon consultation, concluded that the disease might possibly be checked and his life saved by surgery. The consent of his family being given the doctors to undertake the operation, the deceased was placed upon the operating table, the anaesthetic properly administered by a regular physician (which had the ordinary and desired effect), and the operation was commenced. They made an incision over the region of the appendix about four inches long and the depth of the abdominal wall and reached the appendix, which was found to be sloughing off and gangrenous. A ligature was run through and tied around it and the diseased portion cut off, and then the abdominal cavity was washed out with a hot solution, his bowels restored to their proper position and the wound nearly sewed up, lacking only two stitches, when he died,—chloroform having been administered at intervals during the operation.

Dr. McAlpen, a witness for plaintiff, testified: "An operation was finally determined upon; before the beginning of this operation Mr. Glass' condition was very bad; he was very weak; his condition before the operation was such that the operation offered very little hope of relief; we operated because it was the only means or method that offered any chance whatever. The immediate cause of his death was giving him the anaesthetic and going on with the operation; he never recovered consciousness, and the only conclusion that anyone could reach would be that he died under the influence of the anaesthetic and died from the effect of it. I think chloroform killed this man; I know it did; there was contributing factors to his death; I say chloroform did it, because it was the immediate and determining cause, the contributing causes always having effect; this gangrenous condition contributed; he was suffering from blood poison; the blood was infected with this gangrene; that was a contributory cause of his death; I think the patient was suffering from shock before we put him on the table and gave him chloroform; his vitality was very low at that time; the condition of septicemia produced the lowered vitality and shock in the patient before the chloroform was administered; shock is a condition of depression that can follow from medical causes or from a surgical case or from accident; from any injury; it is just simply a sort of nervous depression; the fact that M. E. Glass was suffering from shock and septicemia diminished the chances of a successful operation for appendicitis very materially, because it would be quite natural to suppose that if a man's blood is infected they have a condition unfavorable to recovery; it would diminish the chances of a successful operation because the patient is, so to speak, poisoned; his being in that condition the chances of resuscitation would be less and he would be more apt to die under the operation; septicemia would be a dangerous present agent and liable to produce death under operation."

Dr. Stuart, a witness for defendant, testified: "I consulted with these physicians before the operation, and we agreed that Mr. Glass was suffering from appendicitis and that the abscess had ruptured and the septic material had been diffused throughout the abdominal cavity, and he was then suffering from the absorption of the septic material into the circulation; his condition then was very serious; his extremities were cold; he was nauseous; his respiration was difficult and somewhat labored; his pulse was 140 to 150; in fact, it was so fast it was with great difficulty I counted it at all, and it was questionable in my mind whether he would survive the operation, and I so stated to the gentlemen I was consulting with and his family later. I assured his wife that his condition was critical and serious, and the probabilities were that he would die with the operation, and would be sure to die without an operation; he died before we finished the operation; after I had made an opening into the cavity I found that the patient had had an abscess of the appendix, which is known as the fulminating variety of appendicitis; the word 'fulminating' is intended to convey the idea of something that develops and then explodes, and in this case the abscess had

formed and the appendix had become gangrenous and had ruptured suddenly or exploded, and the septic material had been extravasated throughout the abdominal cavity and absorbed into the circulation; and the patient was suffering at that time from septicemia or blood poison; and he was in a general state of collapse. In appendicitis there are several varieties; there is a variety which, when the infection escapes through the abdominal cavity and is absorbed, generally produces death; it is a term known as streptococous, and that is what produced death in this case,—the absorption of the streptococous, in my opinion; the patient was suffering from shock at the time of the operation, and of course the operation added to the shock; with these factors, in my opinion, death would have occurred in a few hours anyhow; I do not think the man died from the administration of chloroform; I think the getting into the abdominal cavity and the absorption of the poison that had been thrown off by the appendix and the operation together hastened the end; I think he would have lived until midnight or possibly until the following morning, but I do not think he would have lived any longer; I do not think that chloroform was the sole and independent cause of his death; it might have been a contributing cause; in fact, I am of the opinion it was neither the sole nor the independent cause; the proximate cause of his death was the absorption of poisonous germs throughout by his ruptured appendix; his system was overwhelmed with poison; his blood was charged with it, and the vital forces could not stand the infection any longer."

A number of other witnesses and experts testified in the case, and the only reasonable conclusion that can be reached from the evidence is that the death of Mr. Glass was caused from appendicitis. In fact the evidence demonstrates beyond the peradventure of a doubt that his death did not result from chloroform independently of all other causes.

The court should have instructed the jury, as requested by appellant, to return a verdict for the defendant. Because it erred in not so instructing them, and of there being no evidence to support the verdict, the judgment is reversed and the cause remanded.

*Reversed and remanded.*