**Munson H. TIX, Independent Executor of the Estate of Cecile Tix Smith, Deceased, Appellant,**

v.

**EMPLOYERS CASUALTY COMPANY, Appellee.**

No. 14071.

Court of Civil Appeals of Texas.

Houston.

May 9, 1963.

Rehearing Denied May 30, 1963.

Barker, Barker & Coltzer, Jerry D. Barker, Galveston, for appellant.

Royston, Rayzor & Cook, Galveston, Bryan F. Williams, Jr., Edward J. Patterson, Jr., Galveston, of counsel, for appellee.

BELL, Chief Justice.

Cecile Tix Smith was the assured in an accident insurance policy under which appellee agreed to pay $10,000.00 if death resulted to her "directly and independently

of all other causes from bodily injury caused by accident and sustained by assured while in or upon, or while entering into or alighting from * * * an automobile." She died from an acute heart failure on December 11, 1959, while she was in her automobile. Her executor brought suit to recover the proceeds of the policy on the theory that her death resulted from bodily injuries caused by accident directly and independently of all other causes. Trial was to a court without a jury. The court finding that death did not result directly and independently of all other causes from bodily injuries caused by accident, rendered judgment that appellant take nothing.

The position of appellant is that the undisputed evidence shows Mrs. Smith died from bodily injuries caused by accident, directly and independently of all other causes, and the court should have so held as a matter of law. The basis of such contention is that while Mrs. Smith was in bad health generally and had a very bad heart condition, the precipitating cause of her death, according to the testimony of the doctors, was an incident in which she was placed under emotional strain and physical exertion which caused her to have an acute cardiac failure. He says the heart failure was an undesigned, unforeseen and unexpected result of her activity and death was therefore accidental. While her heart was in a diseased condition, this does not prevent her death from resulting directly and independently of all other causes when the precipitating cause of death was an accidental one. His position is that the deceased might have lived indefinitely or might have died at any time but she died at the time she did because of the emotional and physical strain she was placed under by the hereinafter stated incident.

The position of appellee is that there was a difference of opinion as to the proximate cause of Mrs. Smith's death, and different reasonable inferences could be drawn from the evidentiary facts, and it was within the province of the trial court as the trier of the facts to determine whether her death resulted directly and independently of all other causes from accidental bodily injuries. It says there was evidence of probative force to support the trial court's finding of facts No. 11 that her death did not result directly and independently of all other causes from bodily injuries received from an accident.

We, therefore, have before us the question of whether there is any evidence of probative force supporting the trial court's finding that her death did not result directly and independently of all other causes from bodily injuries caused by an accident. While appellant briefs the question as to whether there was bodily injury caused by an accident or resulting from accidental means, the appellee's position seems to be that assuming bodily injuries resulted from an accident [They do not expressly make any such concession], the evidence supports the trial court's conclusion that such injuries were not the sole cause of death. We do not, therefore, discuss the meaning of accidental and accidental means.

■ In determining whether there is evidence of probative value to support a finding of fact, we must examine the evidence and view it most favorably to that finding and draw all reasonable conclusions therefrom. If so viewing the evidence and drawing such reasonable inferences we conclude that a reasonable mind could reach the conclusion reached by the trier of the facts, then there is evidence of probative force and we may not disregard such finding and render judgment contrary to it.

We must review the evidence. Mrs. Smith, on December 11, 1959, the date of her death, was 66 years of age. On such date Mrs. Smith met a friend, Mrs. Gremillion, as Mrs. Smith was coming out of Woolworth's store in Galveston. They had a brief conversation and Mrs. Smith seemed to Mrs. Gremillion to be as well as Mrs. Gremillion had seen her during the previous few months. Mrs. Smith then got into her automobile that was parked at the curb in

front of Woolworth's, and Mrs. Gremillion entered the store. As Mrs. Gremillion entered the store she heard a crash, which noise was made by Mrs. Smith backing her automobile into the automobile that was parked behind hers. As a result the rear bumper of Mrs. Smith's automobile became locked with the front bumper of the automobile behind her. Mrs. Smith got out of her automobile and Mrs. Gremillion came out of the store. Mrs. Smith was provoked at herself for causing this and she was excited. Mrs. Smith got into her car and drove forward slightly to try to unhook the bumpers, but did not succeed. Mrs. Gremillion got upon the back bumper to hold it down and Mrs. Smith drove her car forward one time while Mrs. Gremillion stood on the bumper, but the bumpers did not come unhooked. Mrs. Smith got out of her car again and looked at the bumpers. Mrs. Smith seemed worried for fear Mrs. Gremillion might fall off the bumper and be hurt. A young pedestrian came by and offered assistance. Mrs. Smith got back into her car, started the motor and drove forward while the young man lifted on the bumper of her car. The bumpers became unhooked. Mrs. Smith then got out of her car and looked at the car behind her to see if she had caused any damage. She then got into her car and started to drive it out into the lane of traffic. At this time her face was red and she seemed to be in a hurry. She crashed into the car ahead of her and was found slumped over the steering wheel. She was dead. Her car was still in the parking lane.

Mrs. Smith, for many years, had been under the care of Dr. McLarty. She was first treated for cancer and later for a bad heart condition. At the time of her death she was taking digitalis, diuretics, sedatives and dilators. Her condition was such that she could die at any time without there being any discernible stimulus. She could die while sitting in a chair. She could die in her sleep. She could die from walking up a short flight of stairs. Dr. McLarty had advised her to get an automobile with power steering because he was afraid she would die while driving her car and hurt someone. Her car did not have power steering. In the past few years of her life she had had blackout spells. The worst one was in early September, 1958. From September until the time of her death she had had 6 to 12 minor blackout spells. Dr. McLarty had last seen her in September of 1959, though he talked with her thereafter. In the last few months of her life she had greatly improved, Dr. McLarty thought.

In 1941 there was a malignancy in Mrs. Smith's right breast and the breast was removed. Thereafter she was treated with x-ray. Six years later the left breast was removed and there followed extensive x-ray treatment. Some time later she came to Dr. McLarty with two or three fractured ribs. These fractures were caused by cancer. In about 5 years, after treatment with male hormones, the ribs healed. Dr. McLarty watched her for the cancerous condition right up to the last few years of her life. Some time after the fracture of the ribs, she developed some cancer of the blood vessels in her arms. Dr. McLarty did some radical excisions and some plastic work. He doesn't know why, but this last condition did get well. He thought she became free of cancer in 1957. He also took further x-rays in 1959. He did this because he was watching her condition pretty closely. She had shortness of breath, certain pains, and her heart would bother her. Beginning in 1957 her shortness of breath began. Her pulse would get rapid. He put her on medication to dilate her blood vessels and get better ventilation in the heart muscle. She was nervous and she went from bad to worse and he gave her something to quiet her down. When she would just move her head from side to side her pulse would become rapid. Listening to her heart "was the screwiest thing; it was sort of a gallop rythm." She did not have proper lung capacity because of scar tissue. This scar contraction was caused by the x-ray treatment. The sack around

the heart was pulled a little. He had informed her that her life was limited. She was a widow, living alone, and at one time he sent someone to stay with her because of her condition.

On the death certificate Dr. McLarty showed: "left ventricular fibrillation as producing immediate death and it was due to mechanical traction on pericardium from sclerosis left lung from x-ray therapy—18 years history." Dr. McLarty was asked if after reviewing the autopsy report of Dr. Thoma he reached any different conclusion as to the cause of death from what he put on the death certificate. He then stated: "No, it's impossible to state." At one point in Dr. McLarty's testimony he was asked his opinion as to the precipitating cause of Mrs. Smith's death based on a hypothetical question asked by Mr. Barker, appellant's counsel, which incorporated the facts established about the locked bumper incident. He answered that it was the exertion used in the incident. Immediately thereafter he was asked by Mr. Barker what effect the excitement and concern over her situation had and Dr. McLarty answered: "I don't think I could say—can answer that." At another point he stated in his opinion the exertion triggered off the heart condition that produced cardiac failure. Then he stated he thought the emotion aroused by being caught in the trap and the exertion together brought on her death.

Dr. McLarty testified Mrs. Smith was taking medicine for her heart at the time of her death. She had asked him if she could quit taking it and he told her she could not and saw to it that the prescriptions were refilled by her. He further stated the scar tissue makes one miserable. Mrs. Smith's left lung was not working at all. The air was all coming from the right lung. It was so overworked the air sacks were dilated. Too, the fractures of the ribs hampered her. He didn't want her to exert herself. Dr McLarty at one point testified Mrs. Smith died because of a pre-existing condition in her heart. The exertion and

excitement shown would not affect a normal person. Her heart stopped either because of disease in her heart or something went wrong mechanically. At another point Dr. McLarty testified he could not say exertion was the sole cause of death. The death certificate made no mention of exertion as the cause of death. The blanks on the death certificate relating to accident or injury causing death were not filled out.

Dr. Thoma performed an autopsy on Mrs. Smith. He found the left lung considerably shrunk, scarred and fibrous, and the heart moderately enlarged. The coronary arteries were smooth and open. He found areas of fat where the muscle of the heart had died out and was replaced by fat. There were scattered clumps of lymphocytes in the muscle indicative of a chronic inflammatory process. There was chronic inflammation of the lung due to x-ray treatment. Death was due to acute cardiac failure due to idiopathic myocarditis. Idiopathic is a term indicating cause is not known. It is chronic inflammation of the heart muscle. The cause may have been the x-ray. The effect is to produce an unstable heart condition—like a person has had a previous severe heart attack. There was fat on the liver. Dr. Thoma testified Mrs. Smith's cardiac status was such that any immediate previous aggravating or undue activity would be apt to precipitate acute heart failure. It was his opinion that the incident described could reasonably be expected to produce enough mental and physical strain to surpass the minimum amount of cardiac reserve Mrs. Smith had. This would result in acute heart failure. There were no contusions, abrasions, or cuts on the body to indicate any traumatic application to the body. No ill effect would have resulted to a person with a normal heart. Death resulted within two to four minutes after the onset of the attack. Mrs. Smith's tolerance was low. It is possible that she could have died without any effect from the little collision. If she had not had the heart condition, he would not expect the amount of exertion shown here

to kill her. The inflammation of the heart muscle is a continuing process that over a period of time more substantially affects the proper functioning of the heart. The exertion described could not have caused the death of Mrs. Smith in the absence of the diseased condition she had.

■ We have reached the conclusion that there was evidence of probative force to support the trial court's conclusion that death was not the result directly and independently of all other causes of bodily injuries resulting from accident.

■ The burden of proving that death resulted from bodily injuries caused by accident, directly and independently of all other causes, was on appellant. Robinson v. Aetna Life Ins. Co., 276 S.W. 900 (Com.App.); Standard Life & Accident Ins. Co. v. Roberts, 318 S.W.2d 757 (CCA), writ dismissed; American Casualty Co. v. Jones, 146 S.W.2d 423 (CCA), no writ history; Metropolitan Life Ins. Co. v. Funderburk, 81 S.W.2d 132 (CCA), writ dism.; Commonwealth Casualty and Ins. Co. v. Laurence et al., 223 S.W.2d 337 (CCA), no writ history; Worley v. International Travelers Assur. Co., 110 S.W.2d 1202 (CCA) writ dism.

Appellant says he discharged that burden and established as a matter of law that death resulted to Mrs. Smith from accidental bodily injuries directly and independently of all other causes. The basis of such contention is that both doctors testified that in their opinion the excitment and exertion caused by the locked bumper incident were the precipitating causes of acute heart failure. He urges that though Mrs. Smith had a very diseased heart which could have caused her death at any time without any noticeable stimulus, such was a mere condition upon which the strain caused by excitement and exertion operated, and this does not preclude recovery.

■■ While both doctors did testify at one point in their testimony that in their opinion the exertion and excitement gen-

erated by the incident of Mrs. Smith trying to get her car out of the parking lane was the precipitating cause of her death, at other points in their testimony the effect of their statement of the precipitating cause was weakened, as a reading of their testimony recited above will reflect. On the death certificate which is prima facie evidence of cause of death the doctor showed acute heart failure and left blank the portion of the certificate calling for an answer concerning injury or accident. However, assuming an undiluted and uncontradicted expression of opinion by them as to the precipitating cause, it remains purely opinion evidence and the trier of the facts is not bound by such testimony. Metropolitan Life Insurance Co. v. Funderburk, supra; Hood v. Texas Indemnity Co., 146 Tex. 522, 209 S.W.2d 345 (S. Ct.); Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943 (S.Ct.).

■ Where the policy of insurance provides, as does the one here involved, that there is liability only if death is produced by bodily injuries resulting from accident directly and independently of all other causes, we must seek the proximate cause of death. If some other cause was the proximate cause of death and the accidental bodily injuries are merely a remote cause, there cannot be recovery. It is of course settled in this State that the mere fact that a deceased person was ill and was in a weakened condition so that he was more susceptible to effects from bodily injury will not prevent recovery where the efficient cause of death was the bodily injuries. For instance, if a person has a thinner skull than is normal so he is more susceptible to a skull fracture, such fact will not prevent recovery where the skull is fractured. Though he has arteriosclerosis so he is more likely to have a thrombosis than a person without any arteriosclerosis, this alone would not prevent recovery. He may even have some disease, but if such disease is a remote cause of death only there may be recovery if the proximate efficient cause of death is the

accidental bodily injury. If a person has influenza so his resistance is low, this fact alone does not prevent recovery. These things of themselves are merely conditions or remote causes but are not, as a rule, the proximate or efficient or immediate cause of death.

 Each case must be determined by the peculiar facts. The Texas cases cited us and others we have found, we think, establish the above stated principles of law. The difficulty is not in knowing the principles but in applying them. See Maryland Casualty v. Glass, 29 Tex.Civ.App. 159, 67 S.W. 1062 (CCA), no writ history; Metropolitan Life Insurance Co. v. Funderburk, supra; Standard Life and Accident Ins. Co. v. Roberts, supra; American Casualty Co. v. Jones, 146 S.W.2d 423 (CCA), no writ history; Worley v. International Travelers Assur. Co., supra; McVeigh v. International Travelers Assur. Co., 101 S.W.2d 644 (CCA), writ dism.; Western Indemnity Co. v. MacKechnie, 214 S.W. 456 (CCA), no writ history.

Here the evidence shows Mrs. Smith was in very bad health. She had a very serious active heart disease. She had a lung condition that put a burden on her heart. She had a history of blackout spells though some of them were minor. At her death she was taking medicines for her heart that her doctor refused earlier to allow her to stop taking. She was in such condition from her active heart condition that she could die without there being any noticeable stimulus. Her doctor advised her to get a car with power steering because she was in such condition that ordinary effort in steering the car might be too much for her heart. Her condition was not a mere dormant condition that can be classified as a mere preexisting tendency or condition. Also it is noted the exertion she was placed under was very slight. The emotion produced was slight. From all of these facts the trial court could conclude that the exertion and emotional stimulus caused by the locked bumper incident were either not a cause of her death or were but remote causes and that the proximate and efficient cause was her heart disease. He could well conclude such exertion and emotion were not the cause of Mrs. Smith's death but only the occasion.

 Appellant assigns as a Point of Error the failure of the trial court to make certain findings of fact. We will not consider it because it was not briefed. It probably was not briefed because appellant's real position is that there were no fact issues to be decided but liability was established as a matter of law.

The judgment of the Trial Court is affirmed.