**BEEF INDUSTRIES, INC., Appellant,**

v.

**John O. BRUER, Appellee.**

No. 8460.

Court of Civil Appeals of Texas, Amarillo.

Oct. 29, 1974.

E. Byron Singleton, Amarillo, for appellant.

Culton, Morgan, Britain & White, Sam R. Cummings, Amarillo, for appellee.

ELLIS, Chief Justice.

The defendant corporation, Beef Industries, Inc., has appealed from an adverse judgment entered by the trial court in favor of John Bruer, plaintiff-appellee, for the recovery of money which he allegedly loaned to and was used by the corporation and for unpaid expenses incurred by the plaintiff in behalf of the corporation while he was its president. Affirmed.

The suit was originally instituted by John O. Bruer, plaintiff, against Beef Industries, Inc., Amarillo Industries, Inc., and John R. McCoy, defendants. Bruer alleged that he had loaned money to McCoy, who was acting individually and as an officer, director and agent for Beef Industries, Inc.; that such money was delivered to Beef Industries, Inc., Amarillo Industries, Inc., or their affiliate corporations, or employees or officers during the period Bruer was president of Beef Industries, Inc.; and that such money has never been repaid to the plaintiff. In addition, Bruer alleged that he is entitled to reimbursement for certain expenses incurred while acting as president of Beef Industries, Inc. In his suit he seeks recovery for the unpaid loans and expenses so incurred. By way of counterclaim the defendants sought damages against the plaintiff by reason of his conduct which was allegedly detrimental to the defendants' interests. The trial court sustained McCoy's plea to the jurisdiction, and he was thereafter dismissed as a party defendant. Also, McCoy's counterclaim against the plaintiff was dismissed. The action against Amarillo Industries, Inc., as well as its counterclaim against the plaintiff, was severed from this cause leaving for determination in the instant case his alleged cause of action against Beef Industries, Inc., and its counterclaim against Bruer. The cause was tried before the court without a jury.

Bruer was president of Beef Industries, Inc., for a period of approximately six months beginning in January, 1972, and ending in June, 1972. However, he stated that he was not a stockholder or member of the board of directors for Beef Industries, Inc. During such period, Beef Industries, Inc., a holding company, was engaged in varied agriculture related businesses, and certain of its operations were carried on through its affiliate corporations, which included Amarillo Industries, Inc. While acting as president, Bruer wrote several checks payable to Beef Industries, Inc., and one check payable to its affiliate, Amarillo Industries, Inc. Also,

he wrote one check payable to "Beef Feeders" which was endorsed in behalf of such payee by an officer of Beef Industries, Inc. Seven checks were admitted in evidence in the aggregate sum of $17,800, and judgment was entered by the trial court awarding such sum to plaintiff and denying Beef Industries, Inc., any recovery on its counterclaim. The defendant corporation has brought this appeal from such judgment on nine points of error.

In response to defendant's request, the trial court made and filed its findings of fact and conclusions of law, as follows:

### "FINDINGS OF FACT

"1. At sundry times between February 10, 1972, and June 4, 1972, plaintiff loaned money to the defendant, totaling $17,800.00.

"2. The said money was loaned by the plaintiff to the defendant, and said money was delivered to the defendant, or its affiliate corporations and companies.

"3. The money so loaned was advanced pursuant to the agreement of the defendant to repay said money.

"4. On or about June 19, 1972, plaintiff made demand on the defendant for repayment of the amount of money loaned to said defendant.

"5. Defendant has failed and refused to pay the amount loaned to it by the plaintiff.

### "CONCLUSIONS OF LAW

"1. The defendant breached the agreement to repay the $17,800.00 loaned to it by the plaintiff.

"2. Plaintiff is entitled to recover a judgment from the defendant of $17,800.00, plus interest at 6 per cent per annum from date of judgment and cost of suit.

"3. Defendant is not entitled to recover on its cross-action against plaintiff."

It is well settled that in a nonjury case the trial court is the judge of the credibility of the witnesses and the weight to be given their testimony, and the findings of the court are entitled to the same weight and conclusiveness on appeal as the verdict of a jury. Where there is evidence of probative force to support the findings and judgment of the trial court such findings are controlling on the reviewing court and will not be disturbed even though the evidence is conflicting and the appellate court might have reached a different conclusion. Curtis v. Curtis, 473 S.W.2d 636 (Tex.Civ.App.—Tyler 1971, no writ); Heard v. City of Dallas, 456 S.W.2d 440 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). In the case of Tix v. Employers Casualty Company, 368 S.W.2d 105, 107 (Tex.Civ.App.—Houston 1963, no writ), the court stated:

"In determining whether there is evidence of probative value to support a finding of fact, we must examine the evidence and view it most favorably to that finding and draw all reasonable conclusions therefrom. If so viewing the evidence and drawing such reasonable inferences we conclude that a reasonable mind could reach the conclusion reached by the trier of the facts, then there is evidence of probative force and we may not disregard such finding and render judgment contrary to it."

See also, Guerrero v. Paredes, 470 S.W.2d 921 (Tex.Civ.App.—El Paso 1971, no writ); Coastal Plains Inc. v. City of Fort Worth, 443 S.W.2d 414 (Tex.Civ.App.—Fort Worth 1969, no writ); 4 Tex.Jur.2d Rev. § 783, at 285–286.

The appellant, Beef Industries, Inc., challenged by various points of error the court's admission into evidence and consideration of a check given and delivered by plaintiff in the amount of $3,300 with Beef Feeders as payee, and the inclusion of such amount as a part of the total judgment entered against the defendant. The appellant contends that: there is no proof that such transaction was approved by the board of

directors of appellant corporation; appellee admitted that Beef Feeders was not an affiliate of appellant by defining the four affiliates of the defendant corporation to be others than Beef Feeders; there was no proof that Beef Feeders was controlled by appellant corporation; there is no sameness of officers, directors, control, ownership, or circumstances to justify the trial court's computing the $3,300 check as a corporate obligation of the appellant; and it was error to include the $3,300 amount (along with a certain $5,000 check with Amarillo Industries, Inc., as payee) as indebtedness owing to plaintiff by the appellant corporation.

Bruer testified that in November, 1971, Beef Industries, Inc., was a holding company with four divisions: (1) Amarillo Industries, Inc., a rendering plant; (2) Arkansas Valley Feed Yards, Inc., a feed lot operation in Lamar, Colorado; (3) Triticale Growers, a seed company; and (4) a company called Turb 'N Aire. He stated, in effect, that at the time he became president, he, John O. Bruer, Russell Ellsaesser and Tom Moran were the only employees or persons actively engaged in carrying on the daily business of Beef Industries, Inc., the parent corporation, in Amarillo, Texas. However, Bruer stated that he was president or chief executive "in name" only, and that all policy matters were generally determined by Ellsaesser after clearance with John McCoy by long distance telephone. Additionally, there was testimony by Bruer regarding "Beef Feeders." The precise type of entity referred to as Beef Feeders was not established by the evidence; however, the name "Beef Feeders, Inc.," was set out in the endorsement of the hereinafter described check made payable to Beef Feeders. In response to the question, "Well would you state whether or not Beef Feeders was an affiliate or subsidiary of Beef Industries?" Bruer replied, "That was the plan. . . ." Bruer further indicated that Beef Feeders was a cattle investment plan conceived by Ellsaesser and Bill Janawsin for selling stock in Arkansas Valley Feed Yards, Inc.

Bruer stated that Janawsin was in charge of the plan which would result in relieving Ellsaesser and John McCoy of liability on personally secured notes executed for the benefit of Arkansas Valley Feed Yards. A check in the sum of $3,300 written by Bruer on his personal bank account, dated April 20, 1972, with Beef Feeders as payee, was delivered to Ellsaesser, who, according to Bruer, was vice president and/or secretary-treasurer and director of Beef Industries, Inc. Such check bore the endorsement:

"Beef Feeders Inc.—
By Russell Ellsaesser
Deposit to Beef Industries
seed Acct. No. 10–769–4"

Bruer stated, "Now, that is what they (Beef Industries, Inc.) call their Account, Number 10–769–4, the same as the endorsement on the other checks." The check was admitted into evidence over the defendant's objection.

■ One of the contentions that the trial court erred in admitting and considering such check is predicated on the grounds that Bruer admitted that Beef Feeders was not an affiliate of appellant because in defining the four affiliates of appellant he designated entities other than Beef Feeders. However, Bruer stated that the $3,300 check here involved was given for the purpose of taking care of some of the critical problems of "Beef Industries, and their related Divisions." Further, it is not disputed that the account number of Beef Industries, Inc., is 10–769–4 with Bank of the Southwest, Amarillo, Texas, and this is the same account number to which checks made payable to Beef Industries, Inc., were deposited. Also, the $3,300 check was endorsed "Beef Feeders Inc." by Ellsaesser, a vice president, director and substantial stockholder of Beef Industries, Inc., and that such endorsement so made was designated for deposit to the checking account of Beef Industries, Inc. Under such circumstances, a reasonable inference could be drawn that Beef Industries, Inc. had the use and benefit of the

proceeds of such $3,300 check so deposited to its corporate checking account. There is no showing that such proceeds were used otherwise. It is therefore our opinion that it is immaterial as to whether "Beef Feeders" was specifically listed or included by Bruer as one of the four named affiliates of Beef Industries, Inc.

Bruer contends that he had an agreement whereby he would loan money to the corporation and be repaid. Although there is no evidence that such agreement was authorized by the board of directors, the $3,300 was requested by Ellsaesser, a vice president and director of Beef Industries, Inc., endorsed by Ellsaesser and deposited into its corporate bank account. Further, Ellsaesser testified that the proceeds of all of the checks written by Bruer and introduced into evidence were used to pay operating expenses of the defendant corporation. On June 19, 1972, the Board of Directors of Beef Industries, Inc., met and, upon the basis of compilations of its comptroller, Paul Slagle, recognized a debt owing to Bruer in an amount between $16,000 and $18,000. It appears that the benefits of the checks here involved were received, retained and used by the corporation. The board of directors was made aware that the checks were considered loans and recognized as such by those directors present at the June 19, 1972 meeting. Therefore, the defendant cannot be permitted to now deny liability because of lack of approval by the board of directors, as they are considered to have ratified the transactions. See: Almar-York Co. v. Fort Worth National Bank, 374 S. W.2d 940 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n. r. e.). It is our opinion that there is evidence of probative value from which an inference can be drawn that the check made payable to Beef Feeders in the amount of $3,300 was in fact a loan to defendant corporation whereby defendant obtained the use and benefit of such money, and such transaction was ratified during the June 19, 1972 board of directors meeting of Beef Industries, Inc.

By the remaining points appellant challenges the court's admission into evidence and consideration of a check in the amount of $5,000 payable to Amarillo Industries, Inc. Such challenge is based upon the contentions that: there is no proof that such transaction was approved or authorized by the board of directors of appellant corporation; there is no sameness of officers, directors, control, ownership or circumstances between appellant corporation and Amarillo Industries, Inc., to justify the court's computing such $5,000 as a part of the judgment against appellant; it was error to include the $5,000 as a corporate obligation of appellant corporation; and that the $5,000 item should be excluded from the judgment in this suit in that the cause against Amarillo Industries, Inc., has been severed.

It is undisputed that Amarillo Industries, Inc., is a wholly owned affiliate of Beef Industries, Inc., and Mr. Ellsaesser testified that although the officers are different the Board of Directors is the same. Ellsaesser was president of Amarillo Industries, Inc., vice president of Beef Industries, Inc., on the board of directors of both corporations and stockholder of Beef Industries, Inc. Paul Slagle was vice president of Amarillo Industries, Inc., and comptroller of Beef Industries, Inc. John McCoy was on the board of directors of Amarillo Industries, Inc., and chairman of the board of Beef Industries, Inc. Tom Moran was executive vice president of Amarillo Industries, Inc., stockholder of Beef Industries, Inc., and for a period of time active in the management of Beef Industries, Inc. It is evident from the record that the officers of the companies changed frequently. However, R. L. McCoy, John McCoy, and Russell Ellsaesser, were constant as to their involvement and control over all operations stemming from Beef Industries, Inc., and Tom Moran and Paul Slagle were constantly present in the management of either or both of the companies during the period Bruer was president of Beef Industries, Inc.

Paul Slagle, comptroller of appellant, Beef Industries, Inc., and vice president of Amarillo Industries, Inc., testified that he called Bruer in Illinois to discuss a "particular need of Beef Industries for money to cover a tax liability of Amarillo Industries." Bruer testified to the effect that Slagle requested $5,000 to pay a tax liability of Amarillo Industries, Inc., and further that it would save one transaction if the check was made with Amarillo Industries as payee rather than Beef Industries. He further testified that Amarillo Industries was in a position whereby it would be closed down by the Internal Revenue Service unless the $5,000 payment was received promptly. Therefore, a reasonable inference can be drawn from the evidence that the advancement of $5,000 was to defendant for its use and benefit even though the check was payable to Amarillo Industries, Inc.

 Personal checks drawn by Bruer with Beef Industries, Inc., as payee, along with the $3,300 check payable to Beef Feeders and the $5,000 check payable to Amarillo Industries, Inc., totaling $17,800, were introduced into evidence. The endorsement of the Beef Feeders check and deposit into the defendant's account are supportive of Bruer's contention that the $3,300 was in effect a loan to the defendant. Further, the testimony of Bruer and Slagle support a conclusion that the $5,000 sum was for the use and benefit of defendant. In any event, the evidence indicates that the parent corporation, by its manner of operation, so dominated the subsidiaries and associated entities that the ultimate benefits went to the parent corporation, and thus the parent corporation should be held liable for the obligations of the subsidiaries and entities operated in pursuance of its purposes. See Fitz-Patrick v. Commonwealth Oil Company, 285 F.2d 726 (5th Cir. 1960). Also, see Buie v. C. R. I. & P. Ry. Co., 95 Tex. 51, 65 S.W. 27 (1901), 55 L.R.A. 861. In view of the foregoing and the showing that the $5,000 represented by the check payable to the subsidiary, Amarillo Industries, Inc., was in fact for the benefit of Beef Industries, Inc., the defendant in this case, and thus was an obligation of such defendant corporation, the severance of the cause against Amarillo Industries, Inc., the subsidiary, should not preclude the plaintiff's recovery of such obligation against Beef Industries, Inc., in this suit.

We have carefully considered the authorities cited by the appellant in support of the propositions that one corporation is prohibited from lending its credit to another or guaranteeing contracts of another, and that a corporate officer is not authorized to use corporate funds for his private gain. Also, the appellant has cited authorities pertaining to business or corporate relationships other than those dealing with parent—subsidiary corporate relationship or relationships analogous to those involved in this case. The instant case does not pertain to a situation involving the lending of credit or guaranteeing of contracts between independent or non-affiliated corporations or entities, or of an officer using corporate funds for his personal gain. Rather in this case it appears from the evidence and the reasonable inferences therefrom that the personal funds of the corporate officer were loaned or advanced for the use and benefit of the parent corporation. It is our opinion that the authorities cited by the appellant in support of its position are inapplicable here.

After considering all of the facts and circumstances, we have concluded that the trial court did not err in admitting into evidence and considering the $3,300 check payable to Beef Feeders and the $5,000 check payable to Amarillo Industries, Inc. In view of all the evidence and reasonable inferences therefrom it is our opinion that there was substantial support in the evidence for the trial court's findings and that such findings should not be disturbed on appellate review. Guerrero v. Paredes, supra. Accordingly, appellant's points number 1–9 are overruled.

For the reasons above stated, the judgment of the trial court is affirmed.