Amy Michelle **PRICE**, Independent
Executrix of the Estate of Randy
Price, Deceased, Appellant,

v.

**AMERICAN NATIONAL INSURANCE
COMPANY, Appellee.**

No. 01–02–00195–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 15, 2003.

Rehearing Overruled July 11, 2003.

Lindol Bruce Gregory, Wright & Pitre, Port Neches, for Appellant.

Tara B. Annweiler, Greer, Herz & Adams, L.L.P., Galveston, for Appellee.

Panel consists of Justices HEDGES, JENNINGS, and ADELE ALCALA.

## OPINION

ADELE HEDGES, Justice.

This is an appeal from an order granting American National Insurance Company, (ANICO), appellee, summary judgment. Amy Michelle Price,[1] appellant, contends that the trial court erred in granting summary judgment because (1) ANICO failed to conclusively establish, as a matter of law, that insured, Randy Price, committed suicide, and (2) she produced sufficient summary judgment evidence to create a fact issue on whether ANICO breached the contract. This case turns on the admissibility of summary judgment evidence, not its sufficiency. We reverse and remand.

### Factual Background

In 1994, insured took out three loans from Gulf Coast Bank. He purchased three policies of credit life insurance from ANICO for the amount of the outstanding loan balances. The policies expressly limited recovery to an amount equal to the premiums paid if the insured died from suicide within two years of the policies' effective dates.

On the morning of May 1, 1995, the insured went to his accountant's home, where he and an employee performed some home repair work. Later that day, insured planted grass as feed for his cows and used his backhoe to improve drainage on his ranch. That night, insured's fiancee, concerned because insured was not answering his phone, called insured's neighbors and asked them to check on him. The neighbors went to insured's house, opened the door, which was unlocked, turned on the lights, and saw insured's body lying next to the sofa. At approximately 10:45 p.m., Chambers County Sheriff's deputies arrived, confirmed

---

1. Insured's daughter and one of the beneficia-    ries of the life insurance.

that insured was dead, and investigated the scene. Investigator Yarbrough requested that an atomic absorption test be run on insured's hands. Approximately 40 minutes later, John McAdams, the Justice of the Peace, arrived, ordered an autopsy, and began an inquest into the cause of death. The Justice of the Peace determined that the cause of death was a self-inflicted gunshot wound. On May 2, and 3, Investigator Yarbrough took sworn statements from Arthur Watson (the neighbor), Lillie Nolin (insured's accountant), Amancio Lazo (insured's employee), Gwendolyn Price (insured's ex-wife), Carol Campbell (insured's finance), and Mildred Moore (insured's mother). Also on May 2, Dr. Eduardo Bellas conducted an autopsy and wrote a report in which he concluded that insured had committed suicide.

### Procedural Background

ANICO filed a motion for summary judgment alleging that it was entitled to judgment as a matter of law because insured committed suicide within two years of obtaining the policies. Consequently, the beneficiary was entitled to receive only the amount of the premiums paid by insured, and ANICO paid the premiums to the beneficiary. ANICO also filed a no-evidence motion for summary judgment alleging that Price cannot prove that it wrongfully withheld payment of the proceeds of the policies because she cannot prove that insured's death was not suicide. Price responded to the motion, and ANICO replied to the response. The trial court granted ANICO's motion for summary judgment without stating upon which ground it was granting the motion and overruled Price's objections to ANICO'S motion for summary judgment and ANICO's summary judgment evidence.

### Standard of Review

To prevail on a traditional summary judgment, a defendant must either disprove at least one element of each of the plaintiff's theories of recovery, or plead and conclusively establish all the elements of an affirmative defense. *Am. Tobacco Co., v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997); *Bangert v. Baylor Coll. of Med.,* 881 S.W.2d 564, 566 (Tex.App.-Houston [1st Dist.] 1994, writ denied). A matter is conclusively established for summary judgment purposes if ordinary minds cannot differ regarding the conclusion to be drawn from the evidence. *Bradt v. West,* 892 S.W.2d 56, 65 (Tex.App.-Houston [1st Dist.] 1994, writ denied). If the defendant establishes an affirmative defense, the plaintiff must then introduce evidence that raises a genuine issue of material fact on the affirmative defense. *Nichols v. Smith,* 507 S.W.2d 518, 521 (Tex.1974); *Vu v. ExxonMobil Corp.,* 98 S.W.3d 318, 320 (Tex.App.-Houston [1st Dist.] 2003, pet. filed).

A no-evidence motion for summary judgment is proper when there is a complete absence of evidence of one or more essential elements of a claim or defense on which an adverse party has the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002). The motion must state the elements as to which there is no evidence. TEX.R. CIV. P. 166a(i).

In reviewing a summary judgment, we assume all the evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in favor of the nonmovant. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001). When the trial court's summary judgment order does not specify the ground or grounds on which summary judgment is granted, the nonmovant must show on appeal that each independent

ground alleged is insufficient to support the summary judgment granted.

### Traditional Motion for Summary Judgment

In her first point of error, Price contends that the trial court erred in granting summary judgment because she produced sufficient summary judgment evidence to create a fact issue on whether the insured committed suicide. ANICO asserts the affirmative defense that the policies excluded coverage from death by suicide within two years of the effective date of the policy. We must determine whether ANICO conclusively established that insured committed suicide.

There is a legal presumption against suicide, which, once rebutted, does not have weight as evidence. *Prudential Ins. Co. of Am. v. Krayer*, 366 S.W.2d 779, 780 (Tex.1963). The presumption places the burden of producing conclusive evidence showing suicide on the insurance company. *Smith v. Tenn. Life Ins. Co.*, 618 S.W.2d 829, 833 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ).

The presumption against suicide can be conclusively rebutted by wholly circumstantial evidence. *Krayer*, 366 S.W.2d at 780; *Smith*, 618 S.W.2d at 834. The question is whether reasonable minds might differ as to the inference to be drawn. *Krayer*, 366 S.W.2d at 780. The supreme court has held:

> When the only reasonable inference which can be drawn from all the evidence is that death was the result of suicide, the presumption against suicide is conclusively rebutted. Thus, our inquiry is reduced to whether there was some evidence in the record raising an issue either of accidental

death or homicide, the only other possible hypotheses.

*Id.* (internal citations omitted)

As summary judgment evidence, ANICO relied on the following: an inquest finding; an autopsy report; Chambers County Sheriff's Department investigative report; and a death certificate.

### *Inquest Finding*

The inquest finding states that based on Investigator Yarbrough's investigation and the autopsy report, the Justice of the Peace found that insured died as a result of a self-inflicted gunshot wound to the chest. However, the record reveals that the inquest was conducted on May 1, 1995. The autopsy was not conducted until May 2, the toxicology and atomic absorption tests were not conducted until May 3, and Investigator Yarbrough was still conducting interviews and taking sworn statements as late as May 3. These discrepancies create a fact question as to when the inquest was held and on what evidence the Justice of the Peace relied to reach the conclusion that insured died from a self-inflicted gunshot wound. Furthermore, the conclusion that the wound was self-inflicted is also consistent with a finding that insured's wound resulted from an accidental shooting, and does not necessary mean that insured committed suicide. The inquest finding does not conclusively establish suicide as insured's cause of death.

### *Death Certificate*

ANICO relies on the death certificate to conclusively establish that insured committed suicide. The death certificate indicates that insured's death resulted from a self-inflicted wound to the chest with a .38 special pistol and that the manner of death was suicide.[2] The death

---

**2.** Although a death certificate is prima facie evidence of the facts stated therein if it is

certificate's entry of suicide was based on the opinion of the justice of the peace. Even if this opinion is uncontradicted, it is purely opinion evidence and is not binding on the trier of fact. *See Tix v. Employers Cas. Co.,* 368 S.W.2d 105, 110 (Tex.Civ. App.-Houston 1963, no writ); *see also, Rivas v. Garibay,* 974 S.W.2d 93, 96 (Tex. App.-San Antonio 1998, pet. denied) (holding a jury may disbelieve any witness, including a physician, even though the witness's testimony is not contradicted); *Pan Am. Life Ins. Co. v. Youngblood,* 569 S.W.2d 951, 957 (Tex.Civ.App.-Tyler 1978, writ ref'd. n.r.e.). Furthermore, cause of death is not a subject in which the jury must be guided solely by the opinion testimony of experts. *Tix,* 368 S.W.2d at 110; *Youngblood,* 569 S.W.2d at 957. The death certificate does not conclusively establish suicide as insured's cause of death.

### Autopsy Report

■ ANICO also relies on the autopsy report to establish that insured committed suicide. Dr. Eduardo Bellas, a forensic pathologist, stated that he was of the opinion that insured committed suicide. Price argues that this statement is conclusory. A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Hou–Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 112 (Tex.App.-Houston (14th Dist.) 2000, no pet.). Conclusory statements, even when made by experts, are insufficient to support or defeat summary judgment. *Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex.1997). Although Dr. Bellas's opinion was accompanied by a detailed de-

scription of medical findings, nothing in the medical report indicates what findings are consistent with or prove that the insured committed suicide. Moreover, in *McClelland v. Great Southern Life Insurance Company,* the court held that the doctor who performed the autopsy:

> was not and could not have been testifying as to the intent or lack of intent on the part of the deceased when he went through the hotel room window. He was not present at that time and knew nothing of the occurrence until he performed the autopsy. He was testifying as to what he saw and found upon the body of the deceased.

220 S.W.2d 515, 526 (Tex.Civ.App.-Beaumont 1949, writ ref'd n.r.e.).[3] The autopsy report does not conclusively establish suicide as the cause of death.

### Investigative File

■ Lastly, ANICO also relies on the Chambers County Sheriff's Department investigative file, which includes numerous affidavits, interviews, and reports, to conclusively establish that insured committed suicide. In her response to the motion for summary judgment, Price argued that the affidavits of insured's neighbor, insured's fiancee, and insured's mother are incompetent summary judgment evidence under rule 166a(f). *See* Tex.R. Civ. P. 166a(f). The affidavits state that "to the best of my knowledge the statement is true and correct"; they do not state that they are based on personal knowledge. Rule 166a(f) states that affidavits "shall be made on personal knowledge." Tex.R. Civ. P. 166 a(f). "Statements that are equivo-

---

certified by the state registrar, the death certificate at issue was not certified by the state registrar. *See* Tex. Health & Safety Code Ann. § 191.052 (Vernon 2001).

**3.** We recognize that advances in medical technology since *McClelland* have enabled medical examiners to more readily determine whether a wound is consistent with or supports a finding of a cause of death. However, we will not presume, without more, that a medical examiner's opinion is based on such findings.

cal or are merely based on the affiant's 'best knowledge' constitute no evidence at all and are insufficient to raise a fact issue." *Hall v. Stephenson*, 919 S.W.2d 454, 466 (Tex.App.-Fort Worth 1996, writ denied) (citing *Int'l Turbine Serv., Inc. v. Lovitt*, 881 S.W.2d 805, 808 (Tex.App.-Fort Worth 1994, writ denied)). Therefore, these affidavits constitute no evidence that insured committed suicide, and the trial court erred when it overruled Price's objection.

Price conceded that the investigative file was admissible under rule 803(6), the business records exception, but argued that the narrative reports, contained therein, are hearsay. *See* Tex.R. Evid. 803(6). ANICO replied that the narrative reports are not hearsay because they are offered to show the extent of the officers' investigation, and not for the truth of the matter asserted. Therefore, we consider the interviews only as proof of the extent of the officers' investigation, and not as evidence that insured intended or had a motive to commit suicide. The fact that the officers conducted an extensive investigation, without evidence of their conclusion, is not relevant to our inquiry.

### Price's Response

We summarize the evidence favoring Price to determine whether she produced sufficient evidence to create a fact issue on whether insured's death was not suicide. As summary judgment evidence, Price relied on the following: deposition testimony and an affidavit of Mildred Moore (insured's mother); an affidavit of Mary Arrington (insured's sister), and deposition testimony of Amy Michelle Price Stephenson (insured's daughter).

Price presented evidence showing that insured's behavior prior to his death indicated that he planned to continue living. Insured died a few weeks before his planned marriage to his fiancee. The cou-ple had picked out their wedding invitations. Two months before his death, insured had become a lifetime member of the Houston Rodeo, forgoing a cheaper yearly membership. In the days before his death, insured told his daughter that he was excited about a new cutting horse he had just purchased, he finished installing a fence on his land, and made other improvements to his ranch. His mother and sister testified that he was excited about anything that had to do with his farm. The night before his death, insured made plans to move his sister from Houston to Dallas during the next weekend.

Insured's mother testified that although insured had been through a long, hard divorce, once the divorce was final in December of 1994, he "moved forward in his life and things really improved for him." She testified that he had a close relationship with his four-year-old son. She also testified that insured knew he had a lot of family support and that she could help him financially if he needed it. She had loaned him money in the past and he had always paid her back with interest.

Insured's sister testified that during their conversations about their step-father's suicide, insured said that he could never do that to his children or his mother. Insured's daughter testified that she did not believe her father committed suicide because he was a strong person who had overcome obstacles.

Moreover, the following evidence presented by ANICO, in light of the testimony presented by Price, raises an issue of material fact that insured's death was not suicide. There are no known witnesses of the circumstances surrounding his death. A .38 caliber revolver was found on the sofa next to insured's body and a .38 bullet was recovered from the sofa. However, the officers did not test the bullet to determine whether it was fired from the revolv-

er. The atomic absorption test on the insured's hands was negative, indicating that insured had not recently fired a gun. Although the officers retrieved fingerprints from the gun, there was no evidence that the fingerprints belonged to insured. No suicide note was found and there is no evidence that the insured had indicated a desire to commit suicide and he had not previously attempted to commit suicide.

Assuming all the evidence favorable to Price is true, indulging every reasonable inference in favor of her, and resolving any doubts in her favor, we hold that Price has raised a genuine issue of material fact that insured's death was not suicide. Although the evidence ANICO presented rebutted the presumption of suicide, it did not conclusively establish that insured committed suicide.

Therefore, we hold that the trial court erred in granting summary judgment in favor of ANICO.

### No–Evidence Motion for Summary Judgment

 In its no-evidence motion for summary judgment, ANICO argued that there is no evidence that it was in breach when it withheld payment of the proceeds of the policies because Price had not produced any evidence raising a genuine issue of material fact that insured's death was not suicide. In effect, ANICO tried to shift its burden of proving suicide to Price to prove the insured did *not* commit suicide. ANICO is not entitled to summary judgment on a no-evidence motion on a ground that it had the burden to prove.

To produce "some evidence" of breach, it is sufficient for Price to produce evidence that insured died, and ANICO refused to pay the value of the policy. Copies of the policies and a letter from ANICO indicating that it was refusing payment for the

face value of the policy is in the record and is undisputed.

Therefore, we hold that the trial court erred in granting no-evidence summary judgment in favor of ANICO.

### Conclusion

Our holding is compelled by the inadmissibility of much of ANICO's evidence. It is limited to the state of this record. We do not opine whether ANICO's summary judgment evidence, had it been admissible, would have conclusively established insured's death as suicide as a matter of law.

We reverse the trial court's judgment and remand this cause for trial.