Charlene BENAVIDES, Appellant,

v.

Vernon MOORE, et al., Appellees.

No. 13–91–502–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 10, 1992.

Opinion Denying Motions For
Rehearing Feb. 11, 1993.

Rehearing Overruled March 11, 1993.

James A. Herrmann, Harlingen, Joe A. Cisneros, McAllen, for appellant.

J.W. Dyer, Chris A. Brisack, Jarvis & Kittleman, McAllen, Roger W. Hughes, Jim Denison, Adams & Graham, Harlingen, Sandra Sterba–Boatwright, M.W. Meredith, Jr., Meredith, Donnell, & Abernethy, Corpus Christi, for appellees.

Before FEDERICO G. HINOJOSA, Jr., KENNEDY and SEERDEN, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an appeal from a summary judgment entered against Charlene Benavides who sued Lonnie McCown, Vernon Moore,

and the Texas Farm Bureau Insurance Companies (TFBIC) for sexual harassment, retaliatory discharge, and intentional infliction of emotional distress. Appellant challenges the summary judgment by four points of error. We affirm the trial court's summary judgment that appellant has no claim for intentional infliction of emotional distress. We reverse the remainder of the trial court's judgment and remand the case to the trial court for a trial on the merits on appellant's claims of sexual harassment and retaliatory discharge.

Appellant worked as an agent of TFBIC in Hidalgo County. Appellee McCown was the manager of the Hidalgo County Farm Bureau Insurance Company office, and appellee Moore was the TFBIC district sales manager for the region which included Hidalgo County. Moore fired appellant on October 31, 1989. Appellant filed suit on July 31, 1990, naming Moore, McCown, and TFBIC as defendants. On September 11, 1990, the trial court dismissed the action with prejudice, finding that the Texas Commission on Human Rights had not released jurisdiction. On October 10, 1990, the trial court set aside the dismissal order and abated the cause until the Commission entered its final order.

TFBIC moved for summary judgment on May 1, 1991. TFBIC alleged 1) that appellant and McCown were independent contractors and not employees of TFBIC, 2) that the acts appellant alleged were not relevant to her termination and did not rise to the level of "legal sexual harassment," and 3) that the facts did not support a cause of intentional infliction of emotional distress. On June 6, 1991, McCown moved for summary judgment on the same grounds as TFBIC and on the additional ground that appellant failed to timely assert violations of the Texas Human Rights Act. TEX.REV.CIV.STAT.ANN. art. 5221k (Vernon 1987 & Supp.1992). McCown amended his motion on June 7, 1991.[1] On June 19, 1991, Moore moved for summary judgment on the same grounds as McCown. The trial court heard all motions for sum-

mary judgment on June 28, 1991, and on July 9, 1991, entered summary judgment in favor of Moore, McCown and TFBIC. Benavides perfected appeal to this Court on August 7, 1991.

In order to sustain a summary judgment, we must determine that the pleadings and summary judgment evidence establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). We accept all evidence favorable to the non-movant as true, indulge the non-movant with every favorable reasonable inference, and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). When a defendant moves for summary judgment on several theories and the trial court enters summary judgment without specifying the ground relied upon, we affirm the summary judgment if any one of the theories advanced is meritorious. *Martinez v. Corpus Christi Area Teachers Credit Union*, 758 S.W.2d 946, 950 (Tex.App.—Corpus Christi 1988, writ denied).

By her third point of error, appellant complains that the trial court erred in granting appellees' motions for summary judgment on the ground that appellant was not an employee within the meaning of the Texas Human Rights Act and thus did not state a cause of action. Appellant argues that her employment status is the subject of a factual dispute.

According to the Texas Human Rights Act, the term " 'employee' means an individual employed by an employer." TEX. REV.CIV.STAT.ANN. art. 5221k, § 2.01(6). An "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and any agent of that person." TEX. REV.CIV.STAT.ANN. art. 5221k, § 2.01(7)(A).

---

1. A letter to the trial court's coordinator indicates that the amended motion differs from the original motion by one word.

A " 'Person' means one or more individuals or an association, corporation, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee, trustee in bankruptcy, unincorporated organization, the state, or a political subdivision or agency of the state." TEX.REV.CIV.STAT.ANN. art. 5221k, § 2.01(12).

◼ The Legislature modeled the Texas Human Rights Act on federal law with the purpose of executing the policies embodied in Title VII of the federal Civil Rights Act of 1964, codified as 42 U.S.C. § 2000e, *et seq.* TEX.REV.CIV.STAT.ANN. art. 5221k § 1.02(1) (Vernon Supp.1992). Consequently, when Texas case law fails to address questions raised under the statute, we look to federal case law for guidance. *Cf. Syndex Corp. v. Dean*, 820 S.W.2d 869, 871 (Tex.App.—Austin 1991, writ denied).

Title VII protects employees, not independent contractors. *See Diggs v. Harris Hospital–Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir.1988). Federal courts use a hybrid "economic realities/right of control" test to determine whether a person is an employee or an independent contractor. *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir.1985).

> The economic realities/common law control test considers the economic realities of the work relationship, and the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed, with emphasis on this latter control factor.

*Diggs*, 847 F.2d at 272. The courts also consider the following:

> 1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; 2) the skill required in the particular occupation; 3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; 4) the length of time during which the individual has worked; 5) the method of payment, whether by time or by the job; 6) the manner in which the work relation-

ship is terminated; i.e., by one or both parties, with or without notice and explanation; 7) whether annual leave is afforded; 8) whether the work is an integral part of the business of the "employer," 9) whether the worker accumulates retirement benefits; 10) whether the "employer" pays social security taxes; and 11) the intention of the parties.

*Id.* (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C.Cir.1979)).

We find that a material fact dispute exists concerning appellant's employment status. The summary judgment evidence shows that TFBIC will not negotiate contract terms with prospective agents, that prospective agents must sign a standard contract prepared by TFBIC, that agents may only sell TFBIC insurance, that agents are governed by TFBIC regulations, that agents must attend TFBIC meetings, that agents must perform customer services consistent with the guidelines and instructions contained in the TFBIC Agent Manual, that agents must be employed by TFBIC for ten years before they are entitled to retain renewal premiums upon the agent's termination, that agents are limited in their ability to incur indebtedness, that TFBIC provides secretarial and support services for agents, that agents are required to keep office hours, and that selling insurance is an integral part of TFBIC's business. While the contract states that TFBIC agents are "independent contractors," the facts establish a dispute under the economic realities/right of control test. Summary judgment is, therefore, inappropriate. We sustain appellant's third point of error.

◼ By her first point of error, appellant complains that the trial court erred in granting appellees' motions for summary judgment on the ground that she did not state a claim for sexual harassment and retaliatory discharge under the Texas Human Rights Act.

It is unlawful, under the Act, for an employer to discharge an individual or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment be-

cause of race, color, disability, religion, sex, or national origin. TEX.REV.CIV.STAT.ANN. art. 5221k, § 5.01(1) (Vernon Supp.1992). It is also unlawful for an employer to retaliate or discriminate against a person who has opposed a discriminatory practice or who has made or filed a charge, filed a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act. TEX. REV.CIV.STAT.ANN. art. 5221k, § 5.05(a)(1) (Vernon 1987).

Appellant's petition alleged that she was the only female sales agent in the Pharr office, that her sales record was average to good and "better than some of the male agents who are still employed at the Weslaco agency," that McCown was her supervisor, that he made sexual advances which she rejected, that he became verbally abusive to her, that he treated no male agents in the same manner, that she complained to McCown and Moore, that Moore responded by rebuking her, and that she was terminated by Moore without reason.

Appellant's response to appellees' motions for summary judgment included her deposition testimony that McCown had made a sexual advance toward her and that she had been told that she would be fired if her boyfriend moved in with her. Appellant's response also included the deposition testimony of a colleague who testified that McCown had never lost his temper with male agents as he had with appellant, that he thought McCown's outbursts were serious enough to warrant advising appellant to document them, that appellant was visibly shaken by the incidents, that McCown always put more pressure on appellant than he did on male agents, and that he would have been very upset had the outbursts been directed at him. The response also included the deposition testimony of McCown's secretary who testified that McCown yelled and gesticulated at appellant almost daily, but that he waved his arms at a male agent only once. The secretary also testified that, after appellant was fired, McCown asked her to remember anything negative that appellant had done and to write down any complaints raised by customers about appellant. McCown's sec-

retary also testified that McCown practically ignored appellant after the last yelling incident. The summary judgment evidence also included the deposition testimony of Paul McDaniel, president of the Hidalgo County Farm Bureau, who testified that appellant had informed him that McCown had warned her that she might be fired if her boyfriend moved in with her, that she complained of harassment, that he encouraged her to write a complaint letter, and that he spoke to McCown and Moore about the yelling and the negative response to the complaint. Moore testified by deposition that, during the period of internal complaints, he was told not to talk to appellant and later told to terminate her. He also stated that he did not talk to appellant concerning complaints about her performance and that he assumed McCown, who informed him of the complaints, talked to her.

The summary judgment evidence includes a letter from appellant to McCown, dated May 19, 1989, a letter from McCown to appellant, also dated May 19, 1989, a letter from Moore to appellant, dated May 25, 1989, and a letter from appellant to Moore, dated June 1, 1989. Appellant, in her first letter, complained of McCown's verbal abuse toward her and advised that she was sending copies of the letter to Moore and McDaniel. McCown's letter only referred to appellant's levels of production. Moore's letter responded to appellant's first letter. Moore stated that he did not see the incident, but thought that it was justified, and refused to comment as to whether McCown's behavior was professional. Moore continued to challenge appellant's professionalism and continued to criticize her work habits. He admonished her that she was placing her job, his job and McCown's job in jeopardy by complaining. He claimed that her charge that McCown did not verbally abuse male agents was unjustified, and told her "that [she had] been treated more than fair because [she was] a woman." He also reminded her that a TFBIC agent could be terminated if the County Farm Bureau Board felt that the agent's lifestyle was

detrimental to the County Organization, and finally stated that, if she were to review her insureds and sell life insurance, then she would find that McCown is "a hell of a nice guy." Appellant wrote Moore and complained that he had not addressed her complaint that McCown was verbally abusing her and further complained that Moore's criticisms of her were either false or innuendo.

Copies of the letters were sent to Paul McDaniel, who complained to the TFBIC home office. Jimmy Sides, working in the home office, called Moore and told him, "Moore, don't write any more letters. Get off her case. You have got the board president upset and he has called up here about it."

The evidence appellant produced in response to appellees' motions for summary judgment shows that a material fact dispute exists concerning 1) whether the conditions of appellant's employment were discriminatory and 2) whether her discharge was retaliatory. The trial court erred in entering summary judgment on those grounds. We sustain appellant's first point of error.

■ By her second point of error, appellant complains that the trial court erred in entering summary judgment on appellees' motions that she did not state a claim for intentional infliction of emotional distress.

■ The elements of intentional infliction of emotional distress are: 1) the defendant acted intentionally or recklessly, 2) the defendant's conduct was extreme or outrageous, 3) the defendant's actions caused plaintiff emotional distress, and 4) the emotional distress was severe. *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 692 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Severity of distress is an element of the cause of action, not simply a matter of damages. *K.B. v. N.B.*, 811 S.W.2d 634, 640 (Tex.App.—San Antonio 1991, writ denied). The law intervenes only when the distress inflicted is so severe that no reasonable person could be expected to endure it. *Id.;* RESTATEMENT (SECOND) OF TORTS § 46, comment *j* (1965). The court determines whether the evidence produced

establishes a fact question for the jury. *Tidelands Auto Club v. Walters*, 699 S.W.2d 939, 945 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.).

■ A defendant who moves for summary judgment must show that at least one element of plaintiff's cause of action has been conclusively established against the plaintiff. *State v. Seventeen Thousand and No/100 Dollars U.S. Currency.*, 809 S.W.2d 637, 639 (Tex.App.—Corpus Christi 1991, no writ); *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex. App.—Houston [1st Dist.] 1989, writ denied). Once the defendant has thus negated an element of plaintiff's cause of action, the plaintiff has the burden of introducing evidence that raises an issue of fact with respect to that element. *Goldberg*, 775 S.W.2d at 752.

Appellant alleged in her petition that Moore and McCown acted intentionally, in the scope of their employment with TFBIC, that their conduct was extreme and outrageous, and that their actions caused her to suffer severe emotional distress. Each appellee moved for summary judgment on appellant's claim of intentional infliction of emotional distress, arguing that the evidence "conclusively shows the absence" of extreme or outrageous conduct and of severity of emotional distress.

Appellees attached appellant's deposition testimony in support of their motions for summary judgment. Appellant testified that she suffered mental anguish and stress because her income decreased and because she did not know why she was terminated. She admitted that she consulted no psychologists or psychiatrists and had no plans to do so. When asked if her anguish and stress was the type she could deal with herself or if there were more factors, she replied,

> It has been tough to deal with people's questions as to, you know, what happened with Farm Bureau. Well, I don't know. I got fired. Well, why? Well, I don't know. They didn't tell me.

She then stated that she would simply respond that she had personality conflicts

with some of the people at Farm Bureau. She admitted that she was quickly offered jobs with other insurance agencies and accepted an offer twenty days after being terminated by Farm Bureau.

Appellant offered no evidence which directly showed the severity of her distress. A colleague stated that he would have felt very upset had McCown yelled at him the way he did at appellant. Appellant testified that she only felt stress and anguish from her termination. The colleague's testimony, therefore, is no evidence of the distress appellant felt. Appellant could have testified by affidavit or produced other evidence concerning the severity of the emotional distress she felt. As she did not, her admission that she had not consulted mental health professionals and that she had no intention of doing so, and her tangential response to the inquiry as to whether she could work out the stress and anguish by herself, indicate that whatever actual distress appellant suffered, it did not rise to the level that a reasonable person could not be expected to endure. We, therefore, overrule appellant's second point of error.

■ By her fourth point of error, appellant complains that the trial court erred in granting summary judgment on appellees' motions that claims based on discriminatory conduct prior to October 31, 1989 were not timely raised.

■ Charges of discrimination must be filed with the Texas Commission on Human Rights within 180 days of the alleged act of discrimination. TEX.REV.CIV. STAT.ANN. art. 5221k, §§ 6.01(a), 7.01(a) (Vernon 1987 & Supp.1992). This is a jurisdictional requirement. *Green v. Aluminum Co. of America,* 760 S.W.2d 378, 380 (Tex.App.—Austin 1988, no writ). The statute of limitations for a civil action brought under this act runs from the date of the filing of the complaint, and such a civil action may not be brought more than one year after the filing of the complaint. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 487 (Tex.1991).

Appellant complained of a retaliatory discharge which she alleged occurred on October 31, 1989. She filed a complaint with the Commission on April 26, 1990, and subsequently filed suit on July 31, 1990. Appellant met the jurisdictional requirements to maintain a civil action based on violation of the Texas Human Rights Act.

While appellees contend that the only acts of sexual harassment alleged by appellant occurred in 1986, the fact remains that the gravamen of appellant's complaint is that she was wrongfully discharged as a result of her complaint against appellees' discriminatory practices. To prove that her discharge was wrongful, appellant must necessarily prove that the discharge was the result of her previous complaints of appellees' previous behavior. However, the fact that appellant must bring forward evidence of appellees' acts more than 180 days before she filed a complaint does not make the act complained of occur any sooner or divest the court of jurisdiction. The trial court erred by entering summary judgment against appellant on her claim that appellees violated the Texas Human Rights Act. We sustain appellant's fourth point of error.

That portion of the trial court's summary judgment that appellant has no claim for intentional infliction of emotional distress is AFFIRMED. That portion of the trial court's summary judgment concerning appellant's causes of action under the Texas Human Rights Act is REVERSED and REMANDED to the trial court for trial on the merits.

## OPINION ON MOTION
## FOR REHEARING

We issued our original opinion in this case on December 10, 1992, and on January 14, 1993, we issued an opinion on motion for rehearing. Appellees Moore, McCown and Texas Farm Bureau Insurance Companies have each filed second motions for rehearing. We withdraw the January 14, 1993, opinion on motion for rehearing and substitute the following.

Appellees Moore, McCown, and the Texas Farm Bureau Insurance Companies (TFBIC) have each filed motions for rehear-

ing in this cause. TFBIC, Moore, and McCown each argue that appellant did not timely complain of violations to the Texas Commission on Human Rights and thus the trial court properly entered summary judgment in their favor. Moore and McCown additionally complain that they were not appellant's employers and hence are immune from actions under the Texas Human Rights Act.

A movant for summary judgment must specifically set forth the grounds upon which he relies and a summary judgment may not be granted on grounds which are not raised by the movant in his motion. *Mitre and Canseco v. Brooks Fashion Stores*, 840 S.W.2d 612, 616–17 (Tex.App.—Corpus Christi 1992, writ filed); *see Teer v. Duddlesten*, 664 S.W.2d 702, 704 (Tex.1984). Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979); *Roberts v. Southwest Tex. Methodist Hosp.*, 811 S.W.2d 141, 144 (Tex.App.—San Antonio 1991, writ denied); *Carlisle v. Phillip Morris, Inc.*, 805 S.W.2d 498, 518 (Tex.App.—Austin 1991, no writ); *Dhillon v. General Accident Ins. Co.*, 789 S.W.2d 293, 295 (Tex.App.—Houston [1st Dist.] 1990, no writ). In *Carlisle*, the 3rd Court of Appeals stated:

> In construing the effect of the 1978 amendments to Rule 166a, the Texas Supreme Court has expressed a strong concern that, in an appeal from a summary judgment, issues to be reviewed by the appellate court must have been actually presented to *and considered by* the trial court. (Emphasis in original).

*Carlisle*, 805 S.W.2d at 518 (citing *Clear Creek Basin Auth.* 589 S.W.2d at 675–77). Consequently, we address appellant's points of error only in context of the issues we find were expressly presented to the trial court by appellee's motions for summary judgment and appellant's response. On motions for rehearing, the appellees complain that we failed to address the arguments noted above.

TFBIC, Moore and McCown each argue on motion for rehearing that appellant did not timely complain of violations to the Texas Commission on Human Rights and thus the trial court properly entered summary judgment in their favor. TFBIC did not move for summary judgment on the ground that appellant failed to timely complain to the Commission. Moore and McCown each moved for summary judgment on the ground that appellant filed her complaint on April 26, 1990, and was barred from litigating Human Rights Act violations which occurred prior to October 28, 1989. Moore and McCown now argue that appellant filed her complaint on April 30, 1990, and thus the trial court properly entered summary judgment for appellant's cause of action for retaliatory discharge, which took place on October 31, 1989.

Under *Clear Creek Basin Auth.*, we may not affirm a summary judgment on grounds not advanced in the trial court. Our duty as a reviewing court is to pass only on the propriety of the trial court's entry of summary judgment on the basis of the arguments advanced before the trial court. Had appellees argued that the complaint was filed on April 30, 1990, appellant would have had notice and opportunity to present some evidence disputing appellees' allegation. We cannot affirm the summary judgment on the basis of a factual allegation not made in the trial court.

Moore and McCown also complain that they were not appellant's employers and hence are immune from actions under the Texas Human Rights Act. Moore raised the following four grounds for summary judgment: 1) *appellant* was not "within the class of persons to whom Article 5221k applies," 2) appellant did not timely file a complaint with the Texas Commission on Human Rights, 3) the acts complained of did not rise to the level of harassment under the Texas Human Rights Act, and 4) there was no cause of action for intentional infliction of emotional distress. Moore restated his first ground as "Article 5221k is not applicable to independent contractor relationship" and then argued for three pages that appellant was an independent

contractor and not an employee. Moore concluded his argument with the following statement:

> DEFENDANT MOORE was himself only the district sales manager for Farm Bureau, as such, it is uncontroverted that he was never an "employer", therefore, there is no material issue of fact or causal ground sufficient to form the basis of any issue as to MOORE under Article 5221k.

Moore presented the issue of his status as employer by a single sentence in an argument for a different proposition: whether appellant was an independent contractor.

The parties argued the motions for summary judgment before the trial court. TFBIC argued Ms. Benavides' status as an independent contractor rather than employee. Moore then argued at length that he did not participate in the events which precipitated the suit and also argued just cause for appellant's termination before turning to the issue of appellant's status as an employee under the Texas Human Rights Act. Moore then briefly argued that a manager cannot be held liable under the Act before he proceeded to argue against appellant's intentional infliction of emotional distress claim.

McCown later argued his motion for summary judgment and adopted Moore's argument that managers and supervisors are not liable under the Act. Appellant subsequently conceded that McCown and Moore were not her employers but argued that their discriminatory conduct subjected TFBIC to liability.

Appellee Moore's motion for summary judgment raised the issue of his status as an employer under the Act. While the issue was only tangentially referred to in the motion itself, the fact that Moore argued the issue before the trial court and the fact that appellant responded indicates that the issue was presented to and considered by the trial court. While better summary judgment practice would be to raise each independent ground for summary judgment in different points to ensure that trial courts can easily recognize the arguments before them, the entire record indicates Moore raised the issue of his status as an employer in his motion and called the trial court's attention to the issue. Consequently, we must address Moore's contention that the trial court properly granted summary judgment in his favor with respect to appellant's cause of action under the Texas Human Rights Act.

■ Supervisors and managers are not liable under the Texas Human Rights Act. *Bushell v. Dean,* 781 S.W.2d 652, 657 (Tex. App.—Austin 1989), *rev'd on other grounds,* 803 S.W.2d 711 (Tex.1991), *on remand,* 820 S.W.2d 869 (Tex.App.—Austin 1992, writ denied). Appellant conceded Moore's status as a manager or supervisor, but contended that Moore's acts subjected TFBIC to liability under the Act. There being no fact question regarding Moore's status as an employer, an issue properly before the trial court, we must affirm the grant of summary judgment in favor of Moore with regard to appellant's causes of action under the Act.

■ McCown, however, did not move for summary judgment on the ground that he was not Ms. Benavides' employer. Even though McCown orally adopted Moore's argument that managers and supervisors are not liable under the Act, he did not expressly raise the issue of his status as an employer by written motion. We find no cases which allow a movant for summary judgment to avoid the holding of *Clear Creek Basin Auth.* by orally adopting another movant's argument during the hearing of motions for summary judgment. We cannot affirm summary judgment for McCown on this ground.

We, therefore, GRANT appellee Moore's first and second motions for rehearing and AFFIRM the summary judgment with respect to the Texas Human Rights Act claims advanced against him. We DENY the motions for rehearing filed by McCown and TFBIC.