COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-215-CV

RHEBA JOHNSON                                                                 APPELLANT
 
V.
 
SCOTT FETZER COMPANY D/B/A 
KIRBY                                     APPELLEE
 
------------
 
FROM THE 17TH DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
 
        Appellant 
Rheba Johnson (“Johnson”) sued Appellee Scott Fetzer Company d/b/a Kirby 
(“Kirby”) and Carmello Rodriguez (“Rodriguez”), asserting claims for 
sexual harassment, negligence, assault, battery, and intentional infliction of 
emotional distress. The case proceeded to trial before a jury, and at the close 
of Johnson’s case-in-chief, the trial court directed a verdict for Kirby. The 
jury returned a verdict, and the trial court later rendered judgment for Johnson 
and against Rodriguez. Rodriguez has not appealed the judgment against him.
        Johnson, 
however, appeals the trial court’s directed verdict for Kirby. She claims that 
the trial court erred by granting the directed verdict on her sexual harassment 
claims because some evidence exists that she was an employee of Kirby and that 
the evidence supports the jury’s finding that she was subjected to unlawful 
sexual harassment. She also claims that the trial court erred by granting a 
directed verdict for Kirby on her assault, battery, and intentional infliction 
of emotional distress claims because Rodriguez was a vice-principal of Kirby, 
rendering Kirby vicariously liable for Rodriguez’s torts. Finally, Johnson 
claims that the trial court erred by granting a directed verdict for Kirby on 
her negligence claims because some evidence exists that Kirby maintained control 
over sexual harassment training and reporting concerning its area distributors 
and that Kirby exercised that control negligently, proximately causing her 
injuries and damages. We will affirm.
II. Factual and 
Procedural Background
        Kirby 
manufactures home cleaning systems and accessories, including Kirby vacuums, 
which are marketed to consumers solely through in-home demonstrations. Kirby 
enters into distributor agreements with distributors, who are then authorized to 
purchase products from Kirby and market them. The distributors usually 
accomplish their in-home sales demonstrations by hiring people to act as dealers 
for them. Concerning the sales demonstrations and the dealers who perform them, 
the Kirby distributor agreement provides:
3. Exclusively Consumer 
End-User Sales. . . . [A]ll Kirby Systems purchased by Distributor hereunder 
are purchased solely and exclusively for resale by in person demonstration to 
consumer end-users pursuant to [Kirby’s] marketing system, unless [Kirby] 
otherwise expressly authorizes in writing. Distributor further agrees to use his 
best efforts to conduct the in person demonstration in the home of the consumer 
end-user.
 
. . . .
 
A violation of the 
“Exclusively Consumer End-User Sales” provision will likely result in 
[Kirby] terminating this Agreement . . . and/or taking any other action which it 
believes appropriate under the circumstances.
 
. . . .
 
7(d) Quotas. 
Distributor shall maintain at least the recommended number of active full and 
part-time sales personnel and shall adequately solicit and service its Area by 
meeting its sales frequency ratios as same may be specified by [Kirby] from time 
to time, or as established in policy statements which may be issued or revised 
from time to time by [Kirby], as the minimum requirements for distributors 
generally, or as may be established by [Kirby] specifically for Distributor.
        Ralph 
J. Paul, Jr. (“Paul”) was a distributor for Kirby. Paul enlisted Rodriguez 
to start a separate Kirby distributorship. Kirby approved Rodriguez’s area 
distributorship, and in March 1997, Rodriguez hired Johnson to be one of his 
dealers and to perform in-home demonstrations of the Kirby cleaning systems in 
Weatherford, Texas. While Johnson worked with Rodriguez, Rodriguez subjected her 
to repeated sexual harassment, including unwanted physical touching and verbal 
comments of a sexual nature. One evening as Rodriguez drove Johnson to an 
in-home demonstration, he pulled over on a bridge outside of town, grabbed 
Johnson’s breasts, and tried to kiss her. Johnson fought him off, but not 
before he bit her leg. On another occasion, Rodriguez pushed Johnson against a 
wall in the office and started grabbing and kissing her. Johnson reported these 
and other acts of sexual harassment to Paul, but no action was taken. As a 
result, Johnson quit working for Rodriguez and filed a complaint with the Equal 
Employment Opportunity Commission (“EEOC”) in the fall of 1997.
        The 
EEOC investigated Johnson’s complaint and issued a determination letter 
stating that Kirby was an employer within the meaning of Title VII of the Civil 
Rights Act of 1964 (“Title VII”), that the jurisdictional requirements for 
Johnson’s suit had been met, and that Johnson had suffered sexual harassment. 
Johnson sued Rodriguez and Kirby, among others. In this appeal, she challenges 
the trial court’s directed verdict for Kirby.
III. Standard 
of Review
        A 
court may instruct a verdict if no evidence of probative force raises a fact 
issue on the material questions in the suit. See Szczepanik v. First S. Trust 
Co., 883 S.W.2d 648, 649 (Tex. 1994). A directed verdict for a defendant is 
proper when a plaintiff fails to present evidence raising a fact issue essential 
to the plaintiff's right of recovery. Prudential Ins. Co. v. Fin. Review 
Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Ray v. McFarland, 97 
S.W.3d 728, 730 (Tex. App.—Fort Worth 2003, no pet.); see also TEX. R. CIV. 
P. 268.
        In 
reviewing a directed verdict, we must view the evidence in the light most 
favorable to the party against whom the verdict was rendered. Szczepanik, 
883 S.W.2d at 649; White v. S.W. Bell Tel. Co., 651 S.W.2d 260, 262 (Tex. 
1983). When reviewing a directed verdict on a legal issue, we consider all the 
evidence presented at trial, viewing it in the losing party’s favor as much 
“as the record allows.” S.V. v. R.V., 933 S.W.2d 1, 8 (Tex. 1996).
IV. 
Employer-Employee Relationship
        Johnson 
argues in her first issue that there is some evidence that Kirby was an employer 
for purposes of her claims under the Texas Commission on Human Rights Act 
(hereinafter “TCHRA” or “the Act”) and, alternatively, that she 
possesses standing to sue Kirby even in the absence of a direct 
employer-employee relationship under NME Hospitals, Inc. v. Rennels, 994 
S.W.2d 142 (Tex. 1999). Kirby responds that Johnson has presented less than a 
scintilla of evidence to support either of these theories.
        The 
Legislature modeled the TCHRA on federal law with the purpose of executing the 
policies embodied in Title VII of the Civil Rights Act of 1964. Benavides v. 
Moore, 848 S.W.2d 190, 193 (Tex. App.—Corpus Christi 1992, writ denied). 
Title VII, like the Texas statute, protects employees, not independent 
contractors. Id. In determining whether an employment relationship is in 
fact an employer-employee relationship, as opposed to an independent contractor 
relationship, the federal courts have applied a “hybrid economic 
realities/common law control test.” Deal v. State Farm County Mut. Ins. Co. 
of Tex., 5 F.3d 117, 118-19 (5th Cir. 1993). Texas courts likewise utilize 
this test when determining whether an employer-employee relationship exists 
under section 21.051 of the Act. Thompson v. Austin, 979 S.W.2d 676, 
681-82 (Tex. App.—Austin 1998, no pet.); Benavides, 848 S.W.2d at 193. 
The economic realities component of the test focuses on whether the alleged 
employer paid the employee’s salary, withheld taxes, provided benefits, and 
set the terms and conditions of employment. Deal, 5 F.3d at 119. When 
examining the control component, we focus on whether the alleged employer had 
the right to hire and fire the employee, the right to supervise the employee, 
and the right to set the employee’s work schedule. Id.
        Here, 
Kirby did not have the right to hire and fire dealers like Johnson, the right to 
supervise Johnson, or the right to set Johnson’s work schedule. Each of these 
tasks was reserved to distributors, like Rodriguez. Moreover, Rodriguez was in 
charge of paying Johnson’s salary; Kirby did not withhold taxes, provide 
benefits, or set the terms and conditions of employment. No evidence exists that 
Kirby met any of the economic realities/common law control factors set forth 
above. Further, no independent evidence exists of a direct employer-employee 
relationship between Kirby and Johnson. Accord Read v. Scott Fetzer Co., 
990 S.W.2d 732, 735 (Tex. 1998) (recognizing, under similar facts, that a dealer 
like Johnson was an independent contractor, not an employee of Kirby).
        Johnson 
argues, however, that the EEOC letter is some evidence Kirby was her employer. 
Kirby objected to the admission of the EEOC letter and complains that it has no 
probative value on the issue of whether Kirby is Johnson’s employer because 
the letter is conclusory.[1]  EEOC determinations 
and findings of fact, although not binding on the trier of fact, are generally 
admissible as evidence in civil proceedings as probative of a claim of 
employment discrimination.[2]  Lindsey v. 
Prive Corp., 161 F.3d 886, 894 (5th Cir. 1998) (citing McClure v. Mexia 
ISD, 750 F.2d 396, 400 (5th Cir. 1985)). A trial court may, however, exclude 
an EEOC letter that is so conclusory that it possesses very little probative 
value. Cortes v. Maxus Exploration Co., 977 F.2d 195, 201 (5th Cir. 
1992); Lee v. Executive Airlines, Inc., 31 F. Supp. 2d 1355, 1357-58 
(S.D. Fla. 1998). A conclusory statement is one that does not provide the 
underlying facts to support the conclusion. Price v. Am. Nat’l Ins. Co., 
113 S.W.3d 424, 429 (Tex. App.—Houston [1st Dist.] 2003, no pet.). 
An EEOC letter that does not outline, even summarily, the evidence upon which it 
relies for its conclusions is conclusory and possesses little or no probative 
value. Lee, 31 F. Supp. 2d at 1357.
        Here, 
concerning the employer-employee issue, the EEOC letter simply recites Kirby’s 
contentions that it was not Johnson’s employer; that Rodriguez was an 
independent contractor; that Rodriguez hired Johnson; and that Johnson was an 
independent contractor for Rodriguez; but then states, “EEOC believes there is 
an employer-employee relationship between the Charging Party [Johnson] and . . . 
Kirby Corp.” The letter states no facts in support of this conclusion and does 
not outline any investigative steps taken by the EEOC to reach this conclusion. 
A conclusory statement in an EEOC letter, standing alone, in the absence of 
independent evidence, does not constitute more than a scintilla of evidence. See, 
e.g., Columbia Plaza Med. Ctr. v. Szurek, 101 S.W.3d 161, 169 n.4 (Tex. 
App.—Fort Worth 2003, pet. denied); see also Earle v. Ratliff, 
998 S.W.2d 882, 890 (Tex. 1999) (holding defendant doctor’s summary judgment 
affidavit stating, “[u]se of Steffe pedicle screws and plates met the standard 
of care” was conclusory); Lee, 31 F. Supp. 2d at 1357. Thus, we hold 
that the trial court here did not err by directing a verdict for Kirby in spite 
of the EEOC letter’s statement concerning the employer-employee relationship 
between Johnson and Kirby. This conclusory statement had no probative force and 
did not raise a genuine issue as to whether Kirby employed Johnson.[3]
        Next, 
Johnson argues that even if she has no direct employer-employee relationship 
with Kirby, nonetheless, she has standing to sue Kirby under the TCHRA based on 
the supreme court’s holding in NME Hospitals, Inc. v. Rennels. 994 
S.W.2d at 147. Rennels holds that the Act affords a claim to plaintiffs 
who do not stand in a direct employment relationship with the defendant if: (1) 
the defendant is an employer within the statutory definition of the act; (2) 
some sort of employment relationship exists between the plaintiff and the third 
party; and (3) the defendant controlled access to the plaintiff’s employment 
opportunities and denied or interfered with that access based on unlawful 
criteria. Id. Although Johnson may be able to meet the first two Rennels 
criteria, no evidence exists that Kirby controlled access to Johnson’s 
employment opportunities and denied or interfered with that access based on 
unlawful criteria. Kirby did not have the right to hire or fire Johnson and did 
not set her work hours, salary, commissions, or bonuses. Although Kirby 
indisputably maintained control over how its vacuum cleaners were to be sold, 
this exercise of control in no way denied or interfered with Johnson’s access 
to employment based on unlawful criteria. Thus, Johnson did not satisfy the 
third prong of the Rennels test. See id.
        Viewed 
in the light most favorable to Johnson, no evidence of probative force exists 
that Kirby employed her. Likewise, no evidence exists concerning the third Rennels 
factor—that Kirby controlled access to Johnson’s employment opportunities 
and denied or interfered with that access based on unlawful criteria. 
Accordingly, the trial court did not err by granting a directed verdict for 
Kirby on Johnson’s TCHRA claims. We overrule Johnson’s first issue.[4]
V. Duty to 
Independent Contractor
        Johnson 
argues in her fourth issue that, even in the absence of an employer-employee 
relationship, Kirby owed her a duty to use reasonable care to prevent, 
eliminate, and provide reporting mechanisms for sexual harassment within its 
selling hierarchy, i.e., to protect her from Roderiguez’s sexual harassment. 
Johnson claims that Kirby maintained control over sexual harassment training and 
reporting and exercised that control negligently, breaching its duty of care to 
her and proximately causing her harm. Specifically, Johnson pleaded that Kirby 
was liable for negligence by: (1) failing to take reasonable steps to stop 
Rodriguez’s assaultive conduct, despite having knowledge of the conduct; (2) 
failing to have a policy prohibiting assaultive conduct in the workplace; and 
(3) failing to provide adequate management training to its supervisors. Kirby 
contends that less than a scintilla of evidence exists to support any finding 
that Kirby was negligent, so the trial court properly directed a verdict on 
Johnson’s negligence claim.
        Whether 
a legal duty exists under a set of facts is a question of law. Thapar v. 
Zezulka, 994 S.W.2d 635, 637 (Tex. 1999). As a general rule, there is no 
duty to control the conduct of third persons. Greater Houston Transp. Co. v. 
Phillips, 801 S.W.2d 523, 525 (Tex. 1990). However, with regard to 
independent contractors, the supreme court has adopted the rule enunciated in 
the Restatement (Second) of Torts:
One who entrusts work to an 
independent contractor, but who retains the control of any part of the work, is 
subject to liability for physical harm to others for whose safety the employer 
owes a duty to exercise reasonable care, which is caused by his failure to 
exercise his control with reasonable care.

Redinger v. Living, Inc., 
689 S.W.2d 415, 418 (Tex. 1985) (citing Restatement 
(Second) Torts § 414 (1977)). This rule applies when the general 
contractor retains some control over the manner in which the independent 
contractor’s work is performed, but does not retain the degree of control 
which would subject him to liability as a master. Id. In order for 
liability to attach, however, the general contractor’s retained right of 
control must be “more than a general right to order the work to start or stop, 
to inspect progress or receive reports.” Id.; see also Hoecht-Celanese 
Corp. v. Mendez, 967 S.W.2d 354, 356 (Tex. 1998) (holding that duty of care 
under section 414 arises only where retained right of control is more than 
general or supervisory). The retained right of control must extend to the 
operative details of the contractor’s work such that the contractor is not 
free to do the work in his own way. See Redinger, 689 S.W.2d at 418. The 
duty arising under Restatement section 414 is commensurate with the degree of 
control retained by the general contractor. Elliott-Williams Co. v. Diaz, 
9 S.W.3d 801, 803 (Tex. 1999).
        Additionally, 
general contractor liability results only when the retained control relates to 
the injury-producing activity itself. Clayton W. Williams, Jr., Inc. v. Olivo, 
952 S.W.2d 523, 528 (Tex. 1997). Thus, an employer is not liable for the 
negligence of an independent contractor unless the employer retains the right of 
control or exercises actual control over the condition or activity that causes 
the injury. Id.
        Johnson 
relies on Read as support for her argument that Kirby owed her a duty. Read, 
990 S.W.2d at 736. In Read, the plaintiff was raped in her home by a 
door-to-door salesman demonstrating Kirby cleaning systems as an independent 
contractor for a Kirby distributorship. Id. at 734. Kirby argued that it 
owed no duty of care to consumers viewing Kirby in-home demonstrations performed 
by independent contractors. Id. The supreme court held that Kirby did 
have a duty to protect consumers from sexual assaults by dealers because 
Kirby’s distributorship agreement and its independent dealer agreement both 
required that all sales of Kirby products be made “solely and exclusively by 
in-home demonstrations to consumer end-users.” Id. Because by these 
contractual provisions Kirby retained control over this operative marketing 
detail—mandating in-home sales of its products—the supreme court held that 
Kirby owed a duty to end-user consumers to exercise this retained control 
reasonably. Id. at 736. In Read, Kirby did not challenge the 
jury’s finding that it breached this duty. Id.
        Here, 
unlike the in-home sales requirement in Read, Kirby did not contractually 
retain control over preventing, eliminating, or providing reporting mechanisms 
for sexual harassment within its selling hierarchy. The evidence shows that 
Kirby instituted a sales scheme hierarchy under which divisional supervisors 
managed distributors. Distributors, in turn, recruited area distributors. 
Distributors and area distributors then hired dealers to sell the Kirby cleaning 
systems. Kirby did contractually require its distributors to follow Kirby’s 
policies, including Kirby’s sexual harassment policy,[5] 
and Johnson points to this as evidence of a retained right of control by Kirby. 
Johnson also points to evidence that Kirby failed to distribute its sexual 
harassment policy to Rodriguez, failed to provide Paul or Rodriguez with 
training on sexual harassment prevention, failed to investigate or take action 
when Johnson reported the harassment to Paul, and failed to review Johnson’s 
complaint during its annual review of Paul’s distributorship.[6]  
These facts are not, however, indicative of retained control or a failure to 
exercise control because Kirby’s mere promulgation of a sexual harassment 
policy does not establish that it retained actual control. See 
Hoechst-Celanese Corp., 967 S.W.2d at 357-58 (holding Celanese’s 
insistence that Mundy observe and promote compliance with federal laws and 
safety guidelines did not impose an unqualified duty of care on Celanese to 
ensure that Mundy employees did nothing unsafe). Thus, we hold that a general 
corporate policy alone is not sufficient to show control over operative details 
such that a duty would be imposed by the Restatement. See Dow Chem. Co. v. 
Bright, 89 S.W.3d 602, 611 (Tex. 2002) (holding that the 
argument—“[b]ecause Dow provided safety procedure manuals for all its 
contractors and contractors’ employees, Dow exercised control sufficient to 
give rise to the duty of care owed to Larry Bright”—failed). The retained 
right of control in Read, based on a contractual in-home sales provision, 
does not support Johnson’s contention that a general corporate policy 
constitutes a retained right of control.
        In 
addition to the corporate sexual harassment policy and the in-home sales 
requirement, Johnson also points to the following as evidence of a retained 
right of control by Kirby: evidence that, because Rodriguez was at the area 
distributor level[7] of Kirby’s sales scheme, Kirby 
required him to have at least one office, to maintain a sales force, to adhere 
to company policies (including the in-home sales requirement), to limit his 
sales area,[8] and to not engage in other types of 
employment. Johnson produced no evidence, however, that Rodriguez’s comments 
or actions relate to or stem from Kirby’s negligent exercise of control over 
the in-home sales requirement, the requirement that Rodriguez have at least one 
office, maintain a sales force, adhere to company policies, limit his sales 
area, or decline to engage in other types of employment. Consequently, even if 
Kirby retained control over these details, they have no nexus with the 
injury-producing event: Rodriguez’s sexual harassment. See Tidwell, 867 
S.W.2d at 23 (holding that where Exxon did not have any right to control service 
station security, it could not have any duty to provide same). Thus, by 
neglecting to show how any control retained by Kirby led to the alleged 
injury-producing activity, vis a vis Rodriguez’s comments and actions, 
Johnson failed to prove that Kirby owed her a duty. See Arlen v. Hearst Corp., 
4 S.W.3d 326, 327 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) 
(holding that Chronicle did not have type of specific control required to impose 
a duty under Redinger where Chronicle did not control how its independent 
contractor’s employees delivered newspapers).
        Viewing 
the evidence in the light most favorable to Johnson as much as the record 
allows, we hold that as a matter of law Kirby owed no duty of care to Johnson to 
protect her from sexual harassment based on any retained right of control. 
Consequently, the trial court correctly granted a directed verdict for Kirby on 
Johnson’s negligence claims. We overrule Johnson’s fourth issue.
VI. Independent 
Contractor, Not Vice-Principal
        In 
her third issue, Johnson claims that Rodriguez was a vice-principal of Kirby and 
that, therefore, Rodriguez’s liability for the intentional torts of assault, 
battery, and intentional infliction of emotional distress were imputed to Kirby. 
Kirby argues that Johnson failed to present any evidence supporting her 
contention that Rodriguez was a vice-principal of Kirby.
        A 
vice-principal of a corporation represents the corporation in its corporate 
capacity and includes persons who have authority to employ, direct, and 
discharge servants of the master, those engaged in the performance of 
nondelegable duties of the master, and those to whom a master has confided the 
management of the whole or a department or division of his business. See 
Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 922 (Tex. 1998); Brown & 
Root v. Moore, 92 S.W.3d 848, 851 (Tex. App.—Texarkana 2002, pet. denied).
        No 
evidence exists that Rodriguez was a vice-principal of Kirby. See ANA, Inc. 
v. Lowry, 31 S.W.3d 765, 771 (Tex. App.—Houston [1st Dist.] 
2000, no pet.) (holding no evidence existed that employee was vice-principal). 
To the contrary, Rodriguez did not execute a distributor agreement with Kirby; 
Rodriguez’s agreement was with Paul’s distributorship. Although Rodriguez 
was required to maintain a sales force for the in-home sale of Kirby vacuums and 
his primary area of responsibility for sales was limited to Weatherford, Texas, 
these two requirements do not, as Johnson contends, make Rodriguez a 
vice-principal of Kirby. Cf. Brown & Root, 92 S.W.3d at 855 (holding 
that evidence showed employee was vice-principal when he had the 
authority to direct Brown & Root employees at Lone Star Steel, and Brown 
& Root confided in him to manage the entire Brown & Root operation at 
Lone Star Steel). Instead, the evidence demonstrates that Rodriguez had no power 
to hire or fire other distributors or divisional supervisors; his power was 
limited to hiring and firing his own dealers. See Hammerly Oaks, Inc. v. 
Edwards, 958 S.W.2d 387, 392 (Tex. 1997) (holding fact that leasing agent 
was alone in office fell far short of establishing authority to hire and fire 
employees or management of a department of Hammerly Oaks). Additionally, Kirby 
did not have any authority to bind Rodriguez’s distributorship, or vice versa. 
Rodriguez and Kirby did not share office equipment, office space, sources of 
capital, bank accounts, telephone numbers, addresses, officers, directors, 
managers, common employees, or vendor or supplier credits. Rodriguez was merely 
an independent contractor running his own Kirby distributorship or franchise. Cf. 
Kroger Texas Ltd. P’ship v. Suberu, 113 S.W.3d. 588, 602 (Tex. 
App.—Dallas 2000, pet. filed) (holding Moody and Weir were vice-principals of 
Kroger where Moody signed police reports on behalf of Kroger and Weir was 
responsible for “[e]verything that is concerned with the front end”).
        Because 
there is no evidence that Rodriguez was a vice-principal of Kirby, Kirby cannot 
be held liable for Rodriguez’s intentional torts of assault, battery, and 
intentional infliction of emotional distress. Therefore, the trial court did not 
err by directing a verdict for Kirby on Johnson’s vice-principal, vicarious 
liability theories. We overrule Johnson’s third issue.
VII. Conclusion
        Having 
overruled each of Johnson’s issues necessary for disposition of the appeal, we 
affirm the trial court’s judgment.
 

                                                          SUE 
WALKER
                                                          JUSTICE
   
PANEL B:   DAUPHINOT, 
GARDNER, and WALKER, JJ.
 
DELIVERED: November 13, 2003
 

NOTES
 
1. Johnson 
offered into evidence a certified copy of the letter. She did not call any 
witnesses to explain the EEOC’s investigation or conclusions.
 
2. Here, the 
issue is whether the EEOC letter constitutes probative evidence of an 
employer-employee relationship between Kirby and Johnson, not whether it 
constitutes probative evidence of employment discrimination.
 
3. In light of 
our holding that the EEOC’s conclusory employer-employee relationship 
statement bore no probative force, we do not address Kirby’s cross-point 
contending that the trial court erred by admitting the EEOC letter.
 
4. In light of 
our holding that there is no evidence of an employer-employee relationship 
between Kirby and Johnson, we need not consider Johnson’s second issue, in 
which she claims that there is some evidence that she was subjected to unlawful 
sexual harassment. See Tex. R. 
App. P. 47.1 (providing that appellate court need only address issues 
necessary to final disposition of appeal).
 
5. Kirby’s 
sexual harassment policy states, “Divisional Supervisors have the 
responsibility of giving leadership in their respective Divisions so as to 
maintain their respective Divisions free of sexual harassment.” Kirby’s 
“Recommended Practice” for distributors on the “Intolerance of Any Form of 
Harassment” included the statement that “[t]he Kirby Company expects that 
each Distributor will conduct his/her business in compliance with all applicable 
laws and regulations.” Another policy, entitled “Sexual Harassment 
Policy,” stated that “Distributors must know, you shall not permit, condone 
or excuse sexual harassment of any kind.”
 
6. Evidence 
exists that Kirby expected its distributors to take steps on their own to 
prevent sexual harassment and to comply with the laws on sexual harassment.
 
7. Rodriguez 
did not sign a distributor agreement with Kirby. Instead, Rodriguez was 
considered an area distributor working under Paul’s distributorship.
 
8. Although 
Kirby did honor sales made outside the “primary area of responsibility,” the 
evidence appears to show that such sales were discouraged.